Nicholas W. Mathey, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 13010. Promulgated June 14, 1948.

---

[4] See *Lazier* v. *United States* (Dist. Ct., Dist. N. Dak.), 77 Fed. Supp. 241.

*Edward J. Keelan, Jr., Esq., Joseph N. Welch, Esq.,* and *Samuel S. Dennis, III, Esq.,* for the petitioner.
*Paul P. Lipton, Esq.,* for the respondent.

**OPINION.**

MURDOCK, *Judge*: The petitioner concedes that $688.89 representing foreign profits made by United and $609.72 representing the interest on the final judgment to the date of payment is taxable to him as ordinary income. He contends that the remainder of the net recovery of $107,825.29 was in reality not income at all, but was merely a partial recovery of a capital loss represented by the damage to his shoe machinery business, done by United for the purpose of destroying the petitioner as a competitor. He makes this contention "in view of the general principle of Federal income taxation that a recovery or payment is never income until the capital loss which resulted from the acts for which recovery is sought has been replaced." The petitioner's rationale on this point is much too obtuse and ambiguous. The Court is not unaware of the heavy burden of this tax, but the way to escape it is to point to some provisions of the tax law which are applicable, rather than by a long discussion of vague general principles. The Internal Revenue Code contains specific provisions relating to the computation of a loss. The computation involves the use of a basis, which in turn involves cost and depreciation, and offset against that basis is the amount realized from the disposition of property in a completed and closed transaction. Although the petitioner has filed two lengthy briefs, he has not made a real attempt to spell out any loss under any provisions of the tax law. Indeed, he did not offer evidence to support fully the computation which would have to be made. Instead, he speaks at length of a decline in his net worth, but no such test is set up by the statute. He also talks about the "tax benefit rule," without demonstrating its applicability. He claims that the patent was made worthless by the infringement, but no issue based upon worthlessness

of the patent is raised, and the patent brought in income after further infringement was enjoined. The point does not merit the attention which has been given to it in the trial and in the briefs.

The Commissioner contends that the entire net recovery of $107,-825.29 is taxable as ordinary income in 1944. The taxability of the proceeds of a lawsuit like the one involved herein depends upon the nature of the claim and the actual basis of the recovery in the suit. *Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932, affirming 34 B. T. A. 677; *Swastika Oil & Gas Co.* v. *Commissioner*, 123 Fed. (2d) 382 (affirming 40 B. T. A. 798); certiorari denied, 317 U. S. 639; *Martin Bros. Box Co.* v. *Commissioner*, 142 Fed. (2d) 457; *Raytheon Production Corporation*, 1 T. C. 952; affd., 144 Fed. (2d) 110; certiorari denied, 323 U. S. 779. The record of the infringement suit shows that the petitioner claimed and recovered profits which he lost as a result of the infringement by United and that no part of the award was made to compensate him for the loss of some capital asset alleged and proved by him in the course of the proceeding. Evidence which the petitioner introduced here, relating to an alleged decrease in his net worth, damage to his financial standing and damage to his business reputation, is immaterial in the absence of a showing that that evidence was introduced in the infringement suit and was the basis of a part of the recovery, *W. W. Sly Manufacturing Co.*, 24 B. T. A. 65; *Martin Bros. Box Co.*, *supra*. The allowance for "reasonable royalties" made by the master was not a return of capital, but was to compensate the petitioner for lost profits which were not as easily calculated as some of the others. The conclusion to be drawn from the record in that case is that the entire amount awarded by the master as "rentals" and "installation fees" represents a recovery of lost profits and is taxable as ordinary income.

The petitioner contends that the "increase in award" made by the court in the amount of $45,687.77 was in the nature of a penalty against United and, therefore, was not taxable income within the Sixteenth Amendment and the doctrine of *Eisner* v. *Macomber*, 252 U. S. 189. The short answer is that it was not a penalty. The petitioner throughout the infringement suit took pains to point out repeatedly that he was claiming compensation for lost profits and not a punitive award. The court explained the increase as follows:

As has been outlined above, this court finds the defendant did not act in good faith with respect to the infringement here. The infringement was deliberate. * * * However, with respect to an increase in damages, I agree with Judge Brewster of this court in increasing damages where there was a deliberate infringement. That distinguished jurist, long the senior member of this court, stated in *Muther* v. *United Shoe Machinery Corp.*, *supra*, 780: "while doubtless one of the purposes of the statute was to deter acts of infringement * * *, yet I do not conceive it to be the intent of the law to unjustly enrich the injured party

at the expense of the wrongdoer." However, I believe full justice should be done to the plaintiff, the party wronged. The plaintiff has incurred considerable expense. There is little doubt that all the elements of damage done to the plaintiff are not included in the award made. On due reflection and looking at the whole situation objectively, I believe if the award is increased fifty per cent, it will be adequate.

The foregoing statement shows that the increase was made to compensate the petitioner for the loss of profits and not to punish United. The petitioner does not show any basis upon which this increase could be distinguished or differentiated for tax purposes from the rest of the award. The rest of the amount in controversy was awarded as "interest." It is held that the entire amount in controversy was taxable income. *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88; *Triplex Safety Glass Co. of North America* v. *Latchum*, 44 Fed. Supp. 436; affirmed per curiam, 131 Fed. (2d) 1023; *Commissioner* v. *Woods Machine Co.*, 57 Fed. (2d) 635; certiorari denied, 287 U. S. 613; *W. W. Sly Manufacturing Co., supra; Neils A. Christensen*, 33 B. T. A. 79; *First Bancredit Corporation* v. *Flexlume Corporation*, 10 Fed. Supp. 1015.

The petitioner next contends that any gain which he may have realized is taxable as a capital gain under section 117 (j) in so far as it applies to gains from involuntary conversion of property used in trade or business. He cites *Dowagiac Manufacturing Co.* v. *Minnesota Moline Plow Co.*, 235 U. S. 641, in which the Court said, *inter alia:*

As the exclusive right conferred by the patent was property and the infringement was a tortious taking of a part of that property, the normal measure of damages was the value of what was taken.

Gains or losses from involuntary conversion are described in the statute "as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof." There was here no total destruction, theft, or seizure. However, a partial destruction may be a conversion within the statute. The recovery, in that case, is offset against the basis of the portion destroyed. Here there has been no showing that any particular part of the patent having a disclosed basis was converted or destroyed. Indeed, there was no taking of the patent as such. The petitioner continued to own, possess, and actually to use his patent, throughout and despite the conversion. He had income from it during and after the period of the infringement. United did not purport to be the owner of the patent, attempt to appropriate the patent as such, or impute to itself the full rights of a patent owner. The petitioner, in the exercise of one of its rights under the patent, might have granted United, for a consideration, a nonexclusive license to manufacture and lease machines. United, in effect, usurped that privilege and was required to reimburse the petitioner for his loss of income—ordinary

income rather than capital. The award for this infringement was not made for an involuntary conversion within the meaning of section 117 (j) and the amount of it should not be taxed under that provision.

The petitioner's last contention is that his profit, if any, should be taxed under the provisions of section 107 (b). One of several objections raised by the respondent is that section 107 (b) does not apply unless it appears that the petitioner's gross income in the taxable year from his own invention is not less than 80 per centum of the gross income in respect of such invention in the taxable year plus the gross income therefrom in previous taxable years, and the 12 months immediately succeeding the close of the taxable year. The parties are in disagreement as to just how much of the award may be regarded as gross income from the invention and they are in disagreement as to just what the petitioner's gross income from the invention was in prior years. He claims, in this connection, that certain "direct costs" should be subtracted from his gross receipts from the invention in order to arrive at gross income. He said those direct costs are in the nature of cost of goods sold. Apparently, he would subtract the cost of developing the patent, the salaries of several mechanics who installed the machines in the plants of lessees, ran tests on them, and taught employees of the lessees how to operate them, and the "amortization of the cost of articles out on lease and similar items." The cost of 3 machines which were sold outright, $81, should be subtracted as cost of goods sold. It is not shown that any other expenditures should be subtracted in arriving at gross income instead of being deducted in arriving at net income. The cost of developing the patent is not deductible from rental charges to arrive at gross income. Those costs are recoverable through depreciation, which is not at issue herein. Or, they may have been deducted as business expenses when paid or incurred. Likewise, installation costs are allowed as deductions in arriving at net income, but are not subtracted in determining gross income. The petitioner cites no legal or accounting authority to the contrary. These two items are the only ones relied upon by the petitioner which are sufficient in amount to reduce the gross rentals below 20 per cent of the total income from the invention through 1945. The petitioner's gross receipts from the invention in prior years were substantially in excess of $40,000, which can be taken as a minimum figure. $40,000 is more than 25 per cent of the entire amount of the award received by the petitioner in 1944. Thus, even under the most favorable views, the petitioner has not shown that he is entitled to have any part of his income taxed under section 107 (b).

*Decision will be entered for the respondent.*