*Decision will be entered under Rule 50.*

SPECIALTY ENGINEERING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN G. OGDEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18133, 18627. Promulgated June 30, 1949.

*Clement J. Clarke, Jr., Esq.,* and *James Moore, Esq.,* for the petitioner in Docket No. 18133.

*George V. Strong, Esq.,* and *John H. Zebley, Jr., C. P. A.,* for the petitioner in Docket No. 18627.

*William D. Harris, Esq.,* for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies for 1944 of $6,115.80 in income tax, $719.63 in declared value excess profits tax, and $73,900.10 in excess profits tax of Specialty Engineering Co., hereinafter called Specialty. The errors assigned by Specialty are the action of the Commissioner in disallowing (1) a deduction of $140,000 paid to John G. Ogden in settlement of a judgment; (2) a deduction of $13,509.35 representing counsel fees, accountants' fees, and other costs of defending against Ogden's claim; and (3), in the alternative, if the above items are capital expenditures made to secure

a patent and not ordinary and necessary expenses, then the Commissioner erred in failing to allow a part of that cost as depreciation on the patent.

The Commissioner determined a deficiency of $51,690.82 in income tax of Ogden for 1944. The issues for decision in the Ogden case are: (1) Whether $140,000 received by the petitioner from Specialty Engineering Co. in settlement of a judgment was ordinary taxable income, as determined by the Commissioner, or a long term capital gain, as reported by the petitioner; and (2) whether $56,806.55 representing attorneys' fees, accountants' fees, and miscellaneous expenses in connection with the above litigation was a capital expenditure, to be offset against the amount realized, or an ordinary and necessary business expense incurred in connection with the production or collection of income and for the conservation of property held for the production of income.

The cases were presented separately, but they can be decided in one opinion. The facts have been stipulated.

Specialty is a Pennsylvania corporation. Its returns for 1944 were filed with the collector of internal revenue for the first district of Pennsylvania.

John G. Ogden is an individual, who filed his return for 1944 with the collector of internal revenue for the first district of Pennsylvania.

Ogden invented a body to be placed on an automobile chassis for use in the transportation of bottled beverages. He disclosed the details of his invention to Specialty in the latter part of 1931 in order to interest it in joining with him in the exploitation of the invention. Charles G. Pfeiffer was at that time president of Specialty, which was engaged in the manufacturing business with offices and a plant in Philadelphia. Pfeiffer assisted Ogden in perfecting his invention.

Ogden and Specialty had a verbal agreement in December 1931, under which Ogden and Pfeiffer were to apply for a patent on the invention and Ogden and Specialty were to carry on together the business of manufacturing and selling the bodies, Specialty to do the manufacturing and Ogden to do the selling. Profits were to be divided equally between Ogden and Specialty and patents were to be obtained for their joint benefit on any improvements which might be developed. Ogden and Specialty entered into another verbal agreement in the early part of January 1932, in which they went into more detail in regard to the computation of profits or losses, the sharing thereof, and how various expenses should be borne. Ogden and Specialty operated under those agreements until November 25, 1938, at which time Ogden terminated the arrangement.

A patent on the invention was issued to Ogden and Specialty jointly on December 17, 1935. Other patents were obtained later.

Ogden filed a bill in equity against Specialty on January 9, 1939, in the Court of Common Pleas of Philadelphia County, Pennsylvania, in which he alleged in some detail the agreements between him and Specialty and their operations under those agreements. He concluded by alleging that Specialty owed him a balance, had repudiated the agreement, and had claimed the entire ownership of the business, the patent, the improvements, the equipment used to manufacture the bodies, and other assets used to sell the bodies. He prayed for an accounting and immediate payment of the amounts due him; for an order restraining Specialty from engaging in the business; for the appointment of a receiver; for an order enjoining George W. Parker, Jr., an officer of Specialty, from applying for patents on improvements; and for an order requiring Specialty to reassign the basic patent to Ogden and requiring Parker to assign to Ogden all interest in improvements and applications for patents.

The filing of that bill started litigation which lasted almost six years. Specialty was required to file numerous accounts of the business. The court held that the business had been a partnership between Ogden and Specialty, which began in December 1931 and terminated on November 25, 1938, and, since Specialty had continued the business using the partnership property, it should be required to pay Ogden the value of his interest in the business as of November 25, 1938, plus profits derived from the use of his property right, as required by section 42 of the Uniform Partnership Act.[1] A final decree was entered on November 10, 1944, holding that Specialty was indebted to Ogden in the sum of $248,339.33 and entering judgment for that amount. It also provided that Ogden should have no further rights or interest in the patents or in any of the other assets of the partnership, and Specialty should be free to continue the business with the right to all patents, inventions, and improvements and other assets upon satisfaction of the judgment. It also required Specialty to pay the costs of the proceedings. The court, in a lengthy opinion accompanying the final decree, set forth in considerable detail its method of calculating Ogden's damages. The calculation may be summarized as follows for present purposes:

[1] Section 42 of the Uniform Partnership Act, 59 Pa. Stat., sec. 104, provides that when any partner retires and the business is continued, under certain circumstances, without any settlement of accounts as between the retiring partner and the person or partnership continuing the business, the retiring partner, "as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at at his option * * *, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership."

One-half the value of the patents_____ $101,943.87
One-half "share of profits due to plaintiff [Ogden] by reason of the
    use of his assets" from Nov. 25, 1938, to Dec. 31, 1942_____ 121,696.93
Interest on profits to Nov. 10, 1944_____ 23,359.53
One-half of certain fees_____ 1,707.19
Less amount due Specialty from Ogden on Nov. 25, 1938_____ 368.19

                                                    248,339.33

Specialty took an appeal to the Supreme Court of Pennsylvania, and while that appeal was pending the parties agreed upon a settlement under which Specialty was to pay Ogden $140,000 in satisfaction of the judgment. Their agreement was made the subject of a "stipulation and decree" entered by the court in the equity proceeding. It recited, *inter alia*, that the court had entered a judgment in favor of Ogden in the amount of $248,339.33, from which Specialty had taken an appeal, and it provided for the termination of the litigation, for the payment by Specialty to Ogden of $140,000 in satisfaction of the judgment, the payment of the costs of the legal proceeding by Specialty, the exchange of general releases by the parties, and the relinquishment and assignment by Ogden of all rights in the patents, inventions, and improvements. The decree approved the stipulation.

Specialty paid Ogden $140,000 in settlement of the judgment on December 26, 1944.

Specialty paid $13,509.35 in 1944 in legal fees, accountants' fees and costs.

Ogden paid attorney fees and other expenses of the litigation in the total amount of $56,806.55 in 1944.

Specialty reported on its returns for 1944 a loss of $37,744.16. The documents introduced in evidence as its returns for that year do not show how that loss was computed. The Commissioner, in determining the deficiency, disallowed as a deduction $153,509.35, with the explanation that that amount "explained in your income and declared value excess-profits tax return for 1944 as 'settlement of suit' and claimed as a deduction from gross income has been disallowed."

The Commissioner, in determining the deficiency against Ogden, added $70,000 to income with the explanation that "$56,806.55 claimed in your return as miscellaneous deductions from gross income have been disallowed as specific deductions and treated as a reduction of the gross receipt of $140,000.00 from settlement of a judgment as shown in (b) below" and "The amount of $140,000.00 reported by you in your return as an alleged long-term capital gain to be taken into account in computing net income to the extent of $70,000.00 has been treated herein as ordinary income reduced by expenditures incidental thereto."

Specialty claims that Ogden, having elected to take the profits attributable to the use of his right in the property of the dissolved partnership under the Uniform Partnership Act, must report as ordinary income and Specialty can deduct as an ordinary and necessary expense, whatever part of the $140,000 is properly allocable to such profits, and the logical way to break down the settlement figure is on a proportionate basis by comparing it to the judgment and its constituent parts. Ogden contends that the entire amount of $140,000 was received by him for a capital asset, his interest in the partnership, and, therefore, is taxable to him as capital gain. He argues that the profits and interest mentioned by the court were merely a measure of a part of the price of his interest. *United States* v. *Yerger*, 55 Fed. Supp. 521. The Commissioner argues that Specialty can not deduct any of the $140,000, because it paid it to acquire a capital asset, and yet he has taken the position in the Ogden case that none of the amount represents payment to Ogden for a capital asset.

The Pennsylvania Uniform Partnership Act, under which the court was proceeding in this case, provides for the payment to a retiring partner of the value of his interest at the time of dissolution, and requires, in addition, the payment of interest on that amount up to the time of payment or judgment, as the case may be. The purpose seems to be to pay the retiring partner for his interest in the partnership an amount equal to the value of that interest at the time it was taken and then to pay him something for the delay in paying for it, or perhaps for the improper use of it by others. The act also provides that the retiring partner can take, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership. This payment, being in lieu of interest, could not well be distinguished from interest for tax purposes. It has been held that a payment of this kind, in addition to the payment representing the value of the property taken, is not a payment for the taking of an asset but is what it purports to be, that is, interest or a share of the profits, and is an ordinary and necessary expense of the party who paid it and ordinary income of the party who received it. *Kieselbach* v. *Commissioner*, 317 U. S. 399; *Frederick McLean Bugher et al., Executors,* 9 B. T. A. 1155; *Kena, Inc.,* 44 B. T. A. 217; *Vertex Investment Co.,* 47 B. T. A. 252 (remanded for an unrelated purpose); *William Justin Petit,* 8 T. C. 228, 233; *Murphy Oil Co.,* 15 B. T. A. 1195; reversed on other points, 55 Fed. (2d) 17; 287 U. S. 299.

Thus, in this case, the only amount of the judgment which, if paid, would represent capital expenditures and receipt would be $101,943.87. The court used the words "interest in the partnership" and "the patents" interchangeably. It seems obvious that a part of the $140,000 was paid for Ogden's interest in the partnership and some part of

the $140,000 was paid in lieu of interest on that amount. It would be unjust, in such circumstances, to say that both petitioners have failed for lack of proof, so that Specialty would be allowed no deduction as an ordinary and necessary expense or that Ogden had received the entire amount as ordinary income. Some allocation seems necessary and proper. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. Cf. *Frederick McLean Bugher et al., Executors, supra.* The method which Specialty has suggested for dividing the settlement figure of $140,000 into component parts is the best that has been suggested and will be used. That is, the portion of $140,000 which represents the payment for Ogden's interest in the partnership is to $140,000 as $101,943.87 is to $248,339.33. The portion of the $140,000 representing profits and interest thereon which would be deductible by Specialty and would be ordinary income to Ogden, can be determined in the same way.

The attorneys' fees, accountants' fees, and court costs paid by Specialty and similar amounts paid by Ogden should likewise be divided between capital expenditures and ordinary and necessary expenses by a similar method of apportionment. *Frederick McLean Bugher et al., Executors, supra.* The additional costs of the patents to Specialty, thus determined, should be used in computing deduction for depreciation on those patents. The amount which Ogden received for his interest in the partnership can then be offset by his expenses incident to that sale and the difference will be his capital gain. Computation of the exact amounts in accordance with this opinion is merely a matter of mathematics and will be left to the parties.

*Decisions will be entered under Rule 50.*