CRAMP SHIPBUILDING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12673, 16347. Promulgated September 28, 1951.

*Thomas Reath, Esq., Frederick E. S. Morrison, Esq.,* and *Calvin H. Rankin, Esq.,* for the petitioner.

*Charles R. Johnston, Esq.,* for the respondent.

520

522

**OPINION.**

ARUNDELL, *Judge:* The issues that remain for decision may be classified under two headings. Under the first heading, there is a group of issues that arise out of the respondent's determinations of deficiencies and which are based on the petitioner's allegations of error in such determinations. These issues have to do principally with the proper year in which fees and reimbursable costs under contracts with the United States Navy are properly includible in income. As to these, the facts have been stipulated and are herein referred to as the stipulated issues.

Under the second heading, there is but one issue which is framed by an amendment to respondent's answer to an amended petition and the petitioner's reply thereto. The issue so framed is whether amounts borrowed by the petitioner may be treated as borrowed capital for the purposes of computing its excess profits credit under the invested capital method. At the hearing on this issue, oral evidence was heard and documentary evidence was received. This issue will hereinafter be referred to as the invested capital issue.

## I. The Stipulated Issues.

### 1. *Pennsylvania Corporate Tax.*

Pennsylvania imposed a tax which is denominated in the stipulation as a "Corporate Net Income" tax. The petitioner accrued the amount of such tax in the year for which it was imposed in the period 1941–1945, but did not claim reimbursement therefor because of the Navy's position that such tax was an income tax and not a reimbursable item. In 1945, the Navy reversed its position, and in 1946 it reimbursed the petitioner for a substantial part of such tax. Then the General Accounting Office disallowed such reimbursement and the Navy recouped

from the petitioner the amount reimbursed to it (except for $355.62, which amount the General Accounting Office had not disallowed). The petitioner's claims for reimbursement under its terminated contracts were subsequently settled in a lump sum settlement of a number of disputed items, and its claims under its completed contracts were allowed in full.

The only dispute between the parties is as to the year in which the reimbursement of the amount of the Pennsylvania tax is properly includible in income of the petitioner for Federal income tax purposes. We are not called upon to decide whether such tax was an income tax or franchise tax, or whether it was a properly reimbursable item of cost under the petitioner's contracts with the Navy. We assume that the ultimate decision of the General Accounting Office and the Navy was correct and that the amount of the Pennsylvania tax was a reimbursable item, and is properly includible in petitioner's income.

The position of the petitioner is that throughout the taxable years there was a dispute between it and the Navy as to its right to reimbursement for the Pennsylvania tax and that where such a dispute exists, no income is realized until the year in which liability by the debtor is conceded or determined and until the creditor's right to payment becomes irrevocably fixed. The respondent makes alternative arguments. His principal contention is that the petitioner's right to reimbursement for the Pennsylvania tax (to the extent eventually allowed) constituted income for the year in which liability for the tax accrued, because that right came into existence in the year of accrual. His alternative arguments are that the reimbursements as eventually allowed were income either (a) in the year in which the tax was paid by the petitioner or (b) not later than the year 1945 when the Navy ruled that such tax was an allowable item of cost.

Both parties cite, among others, the cases of *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, and *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. These and other cases lay down broad principles that have become well established in Federal tax law. One of such principles is that a taxpayer is not required to report as income an amount that it may never receive. *North American Oil Consolidated* v. *Burnet, supra; Burnet* v. *Logan*, 283 U. S. 404. Another is that in the case of an accrual basis taxpayer, income is realized in the year in which there has occurred the events which fix the right to receive it, *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, even though the amount is not determined within the year, *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290, and in the recent case of *United States* v. *Lewis*, 340 U. S. 590, the Supreme Court again emphasized the fact that "Income taxes must be paid on income earned (or accrued) during an annual accounting period."

It is our conclusion that under general principles of law the entire amount of the Pennsylvania tax to be reimbursed was accruable as income for the year 1945, but that because of specific statutory provisions that amount must be reduced by the amount that the petitioner was later required to repay to the Navy.

Approaching the present problem from the negative side, it is our view that no amount was properly accruable as income on account of the reimbursement of the Pennsylvania tax prior to the year 1945. It was not known before that year that the amount of such tax would ever be received, in view of the position taken by the Navy, as stipulated, that that tax "was an income tax, which under petitioner's contracts did not constitute an item of reimbursable cost." In 1945, however, all events had occurred which fixed the petitioner's right to be reimbursed for the tax. The petitioner had contracts with the Navy which entitled it to be reimbursed for certain items of construction costs. When the Navy decided in 1945 that the Pennsylvania tax was a franchise tax, the parties to the contract were in agreement as to the petitioner's right to reimbursement. The amount of the Pennsylvania tax could not thereafter be treated as an amount that the petitioner might never receive. We, therefore, conclude that the entire sum of $247,535.01, representing the Pennsylvania tax for the years 1941 to 1945, inclusive, was properly accruable as income in 1945. Although no deficiency for the year 1941 has been determined, we may examine into the facts as to that year because of a possible carry-over. Section 272 (g) of the Internal Revenue Code.

Although we have decided that, under general principles of tax law, the amount of Pennsylvania tax was accruable in 1945, there are statutory provisions which in our opinion serve to reduce the amount of the accrual and to reduce *pro tanto* the amount of income for 1945 resulting from the accrual.

Section 3806 (a) (2) of the Internal Revenue Code provides as follows:

(a) REDUCTION FOR PRIOR TAXABLE YEAR.—

\*    \*    \*    \*    \*    \*    \*

(2) REDUCTION OF REIMBURSEMENT FOR PRIOR TAXABLE YEAR.—In the case of a cost-plus-a-fixed-fee contract between the United States or any agency thereof and the taxpayer, if an item for which the taxpayer has been reimbursed is disallowed as an item of cost chargeable to such contract and, in a taxable year beginning after December 31, 1941, the taxpayer is required to repay the United States or any agency thereof the amount disallowed or the amount disallowed is applied as an offset against other amounts due the taxpayer, the amount of the reimbursement of the taxpayer under the contract for the taxable year in which the reimbursement for such item was received or was accrued (hereinafter referred to as "prior taxable year") shall be reduced by the amount disallowed.

This is a specific provision which expressly deals with factual situations such as are present in this case. If there is any conflict between general principles and specific legislation dealing with a particular subject, the general must yield to the specific. *Pacific Employers Insurance Co.* v. *Commissioner*, 89 F. 2d 186. The substance of section 3806 (a) (2) is that where a taxpayer with a cost-plus-a-fixed-fee contract receives reimbursement for costs, and such costs are disallowed in a later year and are repaid by the contractor or offset against other amounts due to the contractor, the amount of the reimbursement for the taxable year in which it was "received or was accrued  *  *  *  shall be reduced by the amount disallowed."

Section 3806 was added to the Internal Revenue Code by section 508 of the Revenue Act of 1942. In the discussion of this provision, both the Senate Finance Committee Report [1] and the Conference Committee Report [2] refer to I. T. 3577, 1942–2 C. B. 163. In that ruling, the Bureau held that in cases of renegotiation of war contracts resulting in the reduction of profits for prior years for which returns had been filed, no refund or abatement of Federal income and profits taxes for such prior years would be made by reason of the renegotiation, and that such taxes were to be applied as a credit or offset against the amounts to be repaid as the result of the renegotiation. The ruling concluded with the statement that it "applies with equal force to cases involving a cost-plus-a-fixed-fee contract where an item for which the taxpayer has been reimbursed is disallowed as an item of cost chargeable to such contract and the taxpayer is required to repay to the United States the amount disallowed."

The Senate Finance Committee Report states that one of the purposes of the new section "is to make certain that the rule applied by the Bureau shall be applicable in the cases involving cost-plus-a-fixed-fee contracts  *  *  *." The Finance Committee Report gives the following example of the effect of the new provisions: .

For example, if in the year 1942 a taxpayer having a cost-plus-a-fixed fee contract received reimbursements in the amount of $1,000,000 and in the year 1943 an item of $100,000 which is included in the $1,000,000 is disallowed and the taxpayer is required in 1943 to repay the $100,000 to the United States, the reimbursements for the year 1942 are considered to be only $900,000. No part of the $100,000 is deductible in 1943. The reduction in the amount of the reimbursements for the year 1942 will result in a corresponding decrease in the amount of tax for such year. Assuming that such decrease in tax amounts to $60,000, such $60,000 is to be credited against the $100,000 repayment due from the taxpaper, and the taxpayer will pay to the United States the net amount of $40,000.

With that explanation, we think there can be little doubt that in such cases as we have here Congress intended that repayments by contrac-

---

[1] 77th Cong., 2d Sess., Rept. No. 1631 ; 1942–2 C. B. 504, at p. 690.
[2] 77th Cong., 2d Sess., Rept. No. 2586, Amendment No. 459 ; 1942–2 C. B. 701, at p. 728.

tors under cost-plus-fixed-fee contracts are to be related back to the year in which reimbursable cost items became reportable as income, either by actual receipt in the case of a cash basis contractor, or by accrual in the case of an accrual basis contractor. To this extent, Congress changed the general rule of requiring taxpayers to account for each year's operations on the basis of facts known or ascertainable at the end of the year and without regard to what occurred in subsequent years.

Applying the provisions of section 3806 (a) (2) to the Pennsylvania tax, the petitioner must be permitted to reduce income for 1945 by the amount that the Navy subsequently recouped.

The full amount of the reimbursable Pennsylvania tax for the years 1941 to 1945 was $247,890.63, and that was the amount accruable as income for the year 1945. Of this amount, $217,384.03 was reimbursed to the petitioner, of which $217,028.41, or all but $355.62, was disapproved and disallowed by the General Accounting Office and collected from the petitioner by offset or deduction from other amounts due to the petitioner. It is our conclusion that under the provisions of section 3806 (a) (2) of the Internal Revenue Code, the amount of $217,028.41 must be used to reduce the larger amount of $247,890.63 which we have held to be a proper income accrual for 1945. The item of $355.62 which was not disallowed must remain in 1945 income as properly accrued for that year.

Of the total Pennsylvania tax in the amount of $247,890.63, the sum of $30,506.60 was not reimbursed to the petitioner prior to the ruling of the General Accounting Office, and presumably for that reason the propriety of the allowance of that amount was not ruled on by that office. That amount is not subject to the provisions of Code section 3806 (a) (2) because it was neither reimbursed to the petitioner nor repaid by it. Consequently, that amount, which was initially accruable in 1945 as part of the full amount of the Pennsylvania tax, must remain as an accruable amount of income for that year.

The petitioner contends that there should not be any accrual of the reimbursable Pennsylvania tax until the taxpayer's right to payment became irrevocably fixed, which was after the year 1945. We do not read the decisions as requiring irrevocability of the right to payment to support the realization of taxable income. Certainly the Supreme Court has not gone that far. Under its decisions, income is accruable and reportable when all events have occurred which fix the right of receipt, *Spring City Foundry Co.* v. *Commissioner, supra,* and it has never been supposed that payment of taxes should be postponed for an indefinite period in order to ascertain precisely the final outcome of a period or of a given transaction, *Burnet* v. *Sanford & Brooks Co.,* 282 U. S. 359.

The respondent contends that because the Pennsylvania tax with respect to completed contracts was eventually allowed in full, the amount thereof, $86,413.96, should be related back either to the year that liability accrued or the year in which such tax was paid. As to the lump sum payment in settlement of claims for the Pennsylvania tax, and other claims by the petitioner, the respondent's position is that there should be a relation back to prior years of so much of the lump sum payment as equals the Pennsylvania tax, and the balance of the lump sum should be pro-rated among the other items that were so settled.

We do not read Code section 3806 (a) (2) as requiring that the amount of reimbursable cost under a cost-plus-a-fixed-fee contract be held open until all possible negotiations with Government agencies are completed. There is nothing in the language of that section to indicate any such intent on the part of. Congress. The section merely says that the amount of reimbursement for a prior year shall be decreased by the amount that "is disallowed as an item of cost" and which "the taxpayer is required to repay" or is "applied as an offset." It does not require that there be an adjustment of income each time that the contracting parties shift positions. We do not believe that it was the intention of Congress to relate back to a prior year recoveries under Government contracts in later years. Moreover, that section which deals with "credit against repayment on account of renegotiation or allowance" is concerned only with decreases in profits or allowances in prior years. It does not deal with the computation of income or tax where there is a subsequent reimbursement for amounts previously disallowed. Had Congress intended to keep a prior year open for eventual reimbursement of items previously disallowed and repaid by the contractor, a provision therefor would undoubtedly have been inserted in section 3806.

Consequently, while Congress has enacted special rules with respect to accounting for income where there is a disallowance and repayment of costs under cost-plus-a-fixed-fee contracts which result in decreasing what would otherwise be income, it has not provided that subsequent recoveries shall be related back to a prior year. In this situation, it is our view that any subsequent reinbursement of a previously disallowed item of cost should be treated as income under the general rule previously discussed, i. e., for the year in which received or accrued. See *Burnet* v. *Sanford & Brooks Co., supra.* We, accordingly, hold against the respondent's contention on this point and conclude that no part of the 1948 payments in reimbursement of the Pennsylvania tax may be related back to the years when such taxes became an accrued liability of the petitioner.

The respondent also advances the argument that under our holding in *National Builders, Inc.,* 12 T. C. 852, the disallowances by the

General Accounting Office should be disregarded. We do not regard that case as in point. In that case we were dealing with a question of "renegotiation" under Code section 3806 (a) (1). Renegotiation as provided for in various statutory provisions is a formal proceeding for the determination of excessive profits under war contracts. Renegotiation to determine excessive profits is entirely different from the disallowance by the General Accounting Office of claimed cost items, and the rights of the contractor are different. For example, a determination of excessive profits by way of a renegotiation proceeding permits the contractor to have a redetermination by this Court in a proceeding entirely separate from a tax deficiency proceeding. A disallowance by the General Accounting Office does not bestow any such right. It is, accordingly, our view that section 3806 (a) (1) and our holding in the case of *National Builders, Inc., supra,* have no application to this issue.

## 2. *Miscellaneous Cost Reimbursements.*

The amounts that are set forth in the findings of fact were accrued by the petitioner in each of the several years and reported in income. In each of the years 1941 to 1945, inclusive, the amount of miscellaneous costs was in due course reimbursed to the petitioner, and then pursuant to disapproval by the General Accounting Office, was recouped by the Navy. As to the year 1947, the amount of such costs allocable to terminated Contract NOd–1498 was not reimbursed to the petitioner at any time as a specific item. The dispute as to that item was settled in the 1948 lump sum settlement.

The facts under this issue as to the years 1941 to 1945 bring the issue squarely within the provisions of Code section 3806 (a) (2). Under these provisions as we have interpreted them under the next previous issue, the reimbursements made by the Navy for the years 1941 to 1945 are to be "reduced by the amount disallowed" and recouped from the petitioner. As the amounts are equal, there is no income to report from the reimbursements made in the years before us.

The facts as to the year 1947 are somewhat different. The amount of the miscellaneous costs for that year was not reimbursed as such in 1947 and was never reimbursed to the petitioner as a specific item. Consequently, the provisions of Code section 3806 (a) (2) are not applicable to this item. It appears from the stipulation that the petitioner's right to reimbursement for this item of miscellaneous costs for 1947 was in dispute between the contracting parties. Accordingly, it was not properly accruable as income for that year, and the minimum stipulated net operating loss for that year should be increased by that amount.

### 3. *Idle Time—Labor Matters.*

Under labor union contracts, the petitioner was required to pay its employees for time that they spent in connection with labor grievances. The petitioner claimed the amount of such pay as a reimbursable cost item. The Navy held that such pay, to the extent of $43,627.73 for the year 1945, was not reimbursable as cost. Of that amount, the petitioner had been reimbursed to the extent of $39,381.73, and that amount was repaid to the Navy or collected by it by offset against or deductions from other amounts due to the petitioner.

The stipulated facts as to this issue do not make clear the Navy's attitude in 1945 as to payments to the petitioner's employees for idle time. From the fact that the Navy reimbursed the petitioner for a substantial portion of the item now in issue, it would appear that there was no dispute between the parties as to the petitioner's right to reimbursement. Consequently, the entire sum of $43,627.73 was initially accruable as income for the year 1945. But, as we have held under the Pennsylvania tax issue, Code section 3806 (a) (2) serves to reduce that accrual by the amount of $39,381.73 which was subsequently disallowed and recouped from the petitioner. The difference, $4,246, not being affected by section 3806 (a) (2), remained a properly accrued item of income for the year 1945.

### 4. *Fees.*

The petitioner claimed that it was entitled to fees aggregating $332,649.86 with respect to three of its contracts which were terminated in whole or in part for the convenience of the Government. Of this amount, it included in income for 1945 the amount of $307,195.63, which amount was paid to it by the Navy but which the Navy claimed the right to recover. The amounts of the fees were adjusted in later years.

The parties are in agreement that the amount of fees to be taken into account in computing 1945 income is to be determined under the provisions of Code section 3806 (a) (1). They differ as to their interpretation of that section, hence they arrive at different amounts. The petitioner's view is that the amounts of the fees reported in income for 1945 under the three terminated contracts should be reduced as the result of the 1947 and 1948 settlements with the Navy. The respondent's position is that the 1947 and 1948 settlements were tentative and that under *National Builders, Inc., supra*, the fees reported in 1945 may not properly be adjusted on account of such settlements.

Section 3806 (a) (1) provides that in case "a renegotiation is made" in respect of a contract which results in the elimination of excessive profits for a prior year, and the amount eliminated is required to be

repaid or is offset against other amounts due to the taxpayer, the contract price that "was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated." Paragraph (A) of section 3806 (a) (1) includes in the term renegotiation "any agreement with the United States or any agency thereof in respect of one or more such contracts   *   *   *."

To the extent that fees were reduced by the 1947 and 1948 settlements, there was an elimination of profits, as the fees represented profits to the petitioner. The statute goes further and requires that there be a repayment by the taxpayer or an offset against other amounts due to it. Insofar as the several conditions of the statute are fully met, we disagree with the respondent's view that no adjustment should be made for any prior year on the ground that the settlements were tentative. The parties have stipulated that the settlements effected a final compromise and settlement of certain disputed items. As to the item of fees under terminated contracts, there was no reservation of rights by the petitioner. We are also of the opinion that the *National Builders* case is not applicable here. In that case, it was obvious that the matter of excessive profits was still open as a proceeding for the determination of that question was pending before this Court. See *Stow Manufacturing Co.*, 14 T. C. 1440, affd. (C. A. 2) 190 F. 2d 723.

As to Contracts NObs–711 and NObs–1924, it is stipulated that claimed fees in the amounts of $1,013.79 and $5,292.61, respectively, were finally disallowed in 1947 and in that year were either repaid to the Navy or collected by offset or deduction. The adjustments under these two contracts fully meet the conditions of section 3806 (a) (1), and the income from fees reported for 1945 should be reduced by the aggregate of the amounts repaid, $6,306.40.

As to Contract NOd–1498, we are of the opinion that an adjustment of fees to be included in income for the year 1945 will be required. The petitioner reported as income from fees under that contract for 1945 the amount of $281,869.30. Disputes under that contract were settled in 1948 under an agreement which settled the disputes as to fees and other items claimed by the petitioner all of which aggregated $935,714.13. The petitioner says that of the $281,869.30 included in 1945 income under this contract, there should properly be included only a portion thereof, which is to be determined by applying to it the percentage that the settlement figure bears to the total amount of the petitioner's claims under this contract. The theory of the petitioner is that the reduction of its claims that was effected by the 1948 settlement had the effect of eliminating profits represented by the fees, and was also to that extent a repayment by it or an offset against other amounts due to it.

The parties have stipulated that the 1948 settlement effected a "final compromise and settlement" of the disputed items listed in the findings of fact. This was a scaling down of the petitioner's claims against the Navy and, as to the fees, it effected an elimination of what the Navy determined to be excessive profits. Elimination of part of the fees which had theretofore been allowed and paid to the petitioner amounted to a repayment by it or an offset against other amounts due to it. Consequently, it is our view that the petitioner is entitled to a reduction for the year 1945 with respect to the fees reported as income for that year under Contract NOd–1498. Because of the Navy's failure to make an allocation on the settlement figure among the several disputed items that were settled, it becomes necessary to make the best allocation that we can on the facts that are before us. *Helvering* v. *Safe Deposit & Trust Co.*, 316 U. S. 56; *Kauai Terminal, Ltd.*, 47 B. T. A. 523. The petitioner's proposed method seems to us to be entirely reasonable, and the respondent does not voice any objection to it (other than his objection to any reduction at all of 1945 fees). The settlement figure of $567,871.73 is 60.69 per cent of the total claims amounting to $935,714.13. Under this formula there was a reduction of claims, including fees, of 39.31 per cent thereof. Applying this percentage to $281,869.30 gives $110,802.83 as the amount of the reduction and leaves $171,066.47 as the amount of the fees to be included in 1945 income under this contract.

### 5. *Costs Under Facilities Contracts.*

These amounts, aggregating $16,315.49 for the years 1941, 1944, and 1946, were originally accrued and reported as income for the respective years, were reimbursed to the petitioner, then disallowed and recouped by the Navy in 1947, and are now in litigation in Federal courts.

The respondent's position is that section 3806 is not applicable to the costs under the facilities contracts; that the amounts of the reimbursements were income in the years accrued; that the repayments to the Navy are deductible in 1947, and that the petitioner will realize income in the year of final determination, to the extent of any recovery resulting from the pending litigation. On reply brief, the petitioner agrees with the respondent's position. We see no error in the disposition so made of this issue by the parties.

### II. Invested Capital.

In its excess profits tax returns for the years 1942 to 1945, inclusive, the petitioner computed its credit based on invested capital. In computing invested capital, it included therein an amount equal to 50

per cent of the average of the sums borrowed to enable it to carry out its contracts with the Navy. By amended answer, the respondent seeks to exclude from invested capital the amount based on such indebtedness of the petitioner and thereby to increase the deficiencies determined. There is no dispute as to the amounts of the loans, or as to the amount includible in invested capital if, as a matter of law, any amount is includible.

Section 719 (a) (1) of the Internal Revenue Code permits the inclusion of borrowed capital in invested capital, and the term borrowed capital is defined in part as including:

The amount of the outstanding indebtedness (not including interest * * *) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness * * *.

Section 35.719–1 of Regulations 112 contains a definition in similar language, and adds the following:

In order for any indebtedness to be included in borrowed capital it must be bona fide. It must be one incurred for business reasons and not merely to increase the excess profits credit. If indebtedness of the taxpayer is assumed by another person it ceases to be borrowed capital of the taxpayer.

Counsel for the respondent takes the position that the loans made to the petitioner by the Federal Reserve Bank and by the Pennsylvania Company were in fact made upon the faith and credit of the United States because of the assignment by the petitioner to the banks of its rights to receive payment. The argument seems to be that by reason of such assignments the loans were made to the United States rather than to the petitioner, hence the amount of the loans was not indebtedness of the petitioner. The respondent also says that by reason of the assignments the indebtedness was assumed by the United States.

The facts in this case are substantially the same as those in the case of *Brann & Stuart Co.*, 9 T. C. 614,[3] in which the respondent made the same arguments as are made here. In that case, as here, the taxpayer was a contractor who had contracts with the United States Government. It procured bank loans, for which it gave its interest-bearing notes, and as security for payment of the loans it assigned to the bank its right to receive moneys from the Government under the contracts. In holding that amount of the loans was properly to be included in borrowed capital, we said:

This petitioner actually borrowed the amounts stipulated by the parties. It was indebted to the bank for the repayment of those loans. They were evidenced by notes. The petitioner had to pay not only the interest, but also the principal on the notes. The Government was in no way obligated to pay either principal or interest. It did not arrange for the loans and it was in no sense the debtor. The petitioner did not assign the contracts to the bank

---

[3] Acq. 1948–2 C. B. 1.

It performed the contracts itself and earned the compensation provided therein for its services. It merely assigned to the bank its right to receive moneys under the contracts from the Government in payment for materials, supplies, and work performed by the petitioner. It did that at the insistence of the bank, to protect the bank. That arrangement did not make the borrowings any the less the borrowings of the petitioner.

In this case, the respondent places stress upon the fact that the Federal Reserve Bank advanced a part of the borrowed funds. He argues that Federal Reserve Banks are instrumentalities of the United States, and as to the loans made by the Federal Reserve Bank they were in substance made by the United States. We think it unnecessary to trace through the argument as to the legal relation between Federal Reserve Banks and the United States Government. The facts material to a decision of the issue before us are that the Federal Reserve Banks are entities with power to make loans as authorized by statute and regulations of the Federal Reserve System; that as between the petitioner and the Federal Reserve Bank of Philadelphia, indebtedness was incurred by reason of loans by that bank to the petitioner, which indebtedness was evidenced by the petitioner's notes. The indebtedness was incurred for business reasons, and the borrowed funds were used for purposes directly related to the petitioner's business. See *McDonnell Aircraft Corp.*, 16 T. C. 189, where it was held that the fact that loans were partially guaranteed by the Government did not preclude their treatment as borrowed capital. It is our conclusion on this point that the loans made to the petitioner by both the Federal Reserve Bank and the Pennsylvania Company constituted borrowed capital within the meaning of the statute, and the respondent's claim for increased deficiencies is denied.

The parties have filed a stipulation as to dates of assessment and payment of taxes. The facts so stipulated will be given effect in the decision to be entered.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*