GLENSHAW GLASS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30821.   Promulgated August 13, 1952.

*Sidney B. Gambill, Esq.*, for the petitioner.
*Albert J. O'Connor, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* The basic issue before us is the taxability of a sum of money received by the petitioner in 1947 in compromise settlement of several claims asserted against Hartford-Empire Company (hereinafter referred to as Hartford) in two suits and in subsequent settlement negotiations. The claims were for: (1) reimbursement of the sum paid in settlement of the accounting order; (2) reimbursement of litigation and travel expenses; (3) reimbursement of loss incurred in dismantling Shawkee feeders; (4) reimbursement of royalties paid to Hartford; (5) interest on refund of royalties and other reimbursement items; (6) loss due to destruction of fruit jar business; (7) loss due to destruction of various lines of glassware business other than the fruit jar business; (8) punitive damages under section 4 of the Clayton Act (15 U. S. C. A., Title 15, section 15) for violation of Federal antitrust laws resulting in destruction of various lines of glassware business other than the fruit jar business, and (9) punitive damages for loss caused by Hartford's fraudulent practices.

The taxable nature of the sum received in settlement of each of those claims is dependent upon the nature of the claim. That is, a sum received in settlement of a claim for a nontaxable item is nontaxable whereas it would be taxable as ordinary income if the item claimed was an ordinary income item, or taxable as a return of capital if the claim was for recovery of lost capital. *Raytheon Production Corporation* v. *Commissioner*, 144 F. 2d 110, certiorari denied 322 U. S. 777; *Durkee* v. *Commissioner*, 162 F. 2d 184, and cases cited therein.

The parties seem to be in agreement that the sums received in settlement of the first five claims are taxable as ordinary income. The respondent has determined that they constitute ordinary income, and petitioner has offered no evidence or argument to the contrary.

The first issue is whether the sums received in settlement of the punitive damages claims constitute taxable income. It has long been established that punitive damages do not meet the test of taxable income set forth in *Eisner* v. *Macomber*, 252 U. S. 189, 193, as " '* * * the gain derived from capital, from labor, or from both combined', provided it be understood to include profit gained through a sale or conversion of capital assets * * *." *Central R. Co.* v. *Commissioner*, 79 F. 2d 697; *Highland Farms Corporation*, 42 B. T. A. 1314. This basic definition has been recently cited with complete approval in *Commissioner* v. *Culbertson*, 337 U. S. 733, 740, and has been adhered to by the respondent in his Regulations 111, section 29.22(a)–1. Therefore, on the authority of those cases, we follow this rule of long standing that has never been questioned in any court and hold that the sums received in settlement of the punitive damages claims do not constitute taxable income.

The taxability of the sums received in settlement of the claims for loss due to destruction of the fruit jar and other lines of glassware business is in issue because the parties disagree as to what the taxpayer sought to recover. The petitioner contends it sought recovery of lost capital only, and the respondent contends that recovery for the loss of anticipated profits was sought. Whether or not the sums received in settlement of those claims are taxable as a return of capital or as ordinary income is dependent upon the resolution of this question of fact. *Raytheon Production Corporation* v. *Commissioner, supra; Durkee* v. *Commissioner, supra; Jones* v. *Corbyn,* 186 F. 2d 450; *Mathey* v. *Commissioner,* 177 F. 2d 259, affirming 10 T. C. 1099.

The petitioner, in support of its contention that it sought to recover only lost capital, relies on the fact that in these claims the destruction of the business was alleged. However, destruction of a business is a factual premise that might support a claim based on the loss of anticipated profits as well as the loss of capital. We must, therefore, look further to determine what the petitioner sought to recover.

The pleadings in both suits Nos. 2791 and 1650 fail to refer to any asset, either tangible or intangible, that was damaged or destroyed. There is no allegation that any physical assets became idle or useless because of the prohibition against the manufacture of certain lines of glassware but, on the contrary, we know that the same machinery used to manufacture the prohibited glassware was also used to manufacture other unprohibited lines of glassware. Intangibles such as "good will" or "reputation" are nowhere mentioned and there is no contention that with reference to the prohibited lines of glassware business the petitioner had acquired "good will" or that sums had been expended and capitalized in the development of those lines. *Martin Brothers Box Co.* v. *Commissioner,* 142 F. 2d 457.

No evidence was introduced in the litigated suit or in this proceeding to establish at least that there had been in existence an asset, later destroyed, that could conceivably have been the basis of a claim for lost capital. The petitioner offered no evidence of customers' lists, schedule of valuable established merchandise outlets for those wares, testimony of preference given to those wares by consumers, or similar evidence likely to be introduced where loss of good will or a similar asset is in issue. In fact, the evidence establishes that the petitioner's fruit jar business was not begun until July 1931 and, further, that in September of that year the petitioner gave to a distributor a 5-year exclusive distribution contract for the sale of its entire fruit jar output.

The evidence in the litigated suit consisted mainly of a showing of loss of anticipated profits. Testimony and exhibits were introduced to support an estimate of the profits that would have been earned during the period beginning 1934 and ending with the removal in

1940 of the prohibitions against the manufacture of fruit jars. The significance of the petitioner's reliance on such evidence is not lessened because evidence of past profits actually earned is sometimes introduced to value good will. See *Raytheon Production Corporation* v. *Commissioner, supra.* It is very unlikely that the petitioner attempted to prove the value of good will by estimating anticipated profits. In any event, such a purpose cannot be inferred when there is no reference to good will or any similar asset that might need to be valued. Finally, we must note that the Circuit Court of Appeals for the Third Circuit characterized that claim as a "claim for loss of profits." *Hartford-Empire Co.* v. *Shawkee Mfg. Co.,* 163 F. 2d 474, 479.

After carefully studying this and all other evidence, especially the exhibits and testimony pertinent to suits Nos. 2791 and 1650, and subsequent discussions between Hartford and the petitioner, we find the posture of the litigation and settlement negotiations to be such that on the record before us we cannot find that the recovery sought was for lost capital but, on the contrary, find that recovery was sought for the loss of anticipated profits. Therefore, the sums received in settlement of those claims represent recovery for the loss of anticipated profits and are taxable as ordinary income. *Raytheon Production Corporation* v. *Commissioner, supra; Durkee* v. *Commissioner, supra; Jones* v. *Corbyn, supra; Mathey* v. *Commissioner, supra.*

However, even if the evidence established that the petitioner sought recovery only in part for loss of anticipated profits, the entire proceeds would represent a recovery for the loss of anticipated profits. The respondent has in effect determined that none of the settlement proceeds represented a return of capital, and the petitioner has relied entirely on the proposition that recovery was solely for lost capital and that the proceeds received in settlement represent a return of capital. The petitioner therefore made no attempt to, and the record does not contain any evidence on the basis of which we could, apportion the settlement proceeds between recovery of lost capital and recovery for loss of anticipated profits. Under such circumstances, the entire sum received in settlement of those claims represents a recovery for loss of anticipated profits and is taxable as ordinary income. *Armstrong Knitting Mills,* 19 B. T. A. 318; *Arcadia Refining Co.* v. *Commissioner,* 118 F. 2d 1010; *H. Liebes & Co.* v. *Commissioner,* 90 F. 2d 932; *Martin Brothers Box Co.* v. *Commissioner, supra.*

Finally, we must determine what portion of the $813,358.24 settlement proceeds is allocable to the punitive damages claims and how much is allocable to the remaining claims which give rise to taxable income. Since the entire sum allocable to the remaining claims is taxable as ordinary income, it is not necessary that we determine what portion is allocable to each individual item in that category.

The parties to the compromise settlement merely agreed to a lump sum payment and made no attempt to decide how much was paid and received in settlement of each claim or how much was attributable to the punitive damages claims. Under those circumstances, an allocation is necessary and proper. *Specialty Engineering Co.*, 12 T. C. 1173; cf. *Cramp Shipbuilding Co.*, 17 T. C. 516; see *Helvering* v. *Safe Deposit & Trust Co.*, 316 U. S. 56.

The petitioner proposes that we allocate to the punitive damages claims that proportion of the gross settlement proceeds ($813,358.24) which the value assigned to those claims by the petitioner at the beginning of settlement negotiations bears to the total value ($1,530,000) assigned to all claims at that time. Pursuant to that proposal, petitioner allocated $324,529.94 to the punitive damages claims and the balance to the remaining claims.

We accept the general method of allocation proposed by the petitioner as a reasonable one which in our opinion is fair to the respondent, and in so doing we are not unmindful of the respondent's objection that this method ignores the relative weight possessed by those various claims. However, we do not deem this material since the respondent does not suffer from the allocation as proposed. The failure to take into account relative weight did not increase, and possibly decreased, the amount of the settlement proceeds allocated to the punitive damages claims. For example, by giving equal weight to the claim for destruction of the fruit jar business, admittedly the weakest claim, the amount allocated to ordinary income was proportionately increased and the amount allocated to the punitive damages claims was proportionately decreased.

Furthermore, not only did the claims for punitive damages possess more weight than the claim for destruction of the fruit jar business but, in addition, we think they possessed at least approximately the same weight as all other claims, other than the first three relatively small claims totaling $44,938.47 and the interest thereon.

The claims for punitive damages, especially the claim in No. 2791, were serious claims that undoubtedly figured prominently in the settlement negotiations and final settlement agreement. In No. 1650, the petitioner pressed a claim for treble damages under section 4 of the Clayton Act. Hartford had already been found guilty of violating Federal antitrust laws and the judgment was affirmed by the United States Supreme Court. In No. 2791, the Circuit Court of Appeals for the Third Circuit ruled that the petitioner should receive punitive damages and prepared the way for a large award by scathingly denouncing the fraud of which the petitioner had been a victim, and by stating that "In those circumstances, the trial court has power to inflict such damages, 'having in view the enormity of * * *

[the] offense rather than the measure of compensation * * *.' ''
Hartford had earned large profits as a result of those fraudulent
practices.

The sum of $813,358.24 received as a lump sum settlement will be
apportioned in the manner set forth in our findings and the tax
thereon will be computed as we have determined herein.

The parties have agreed that the legal fees incurred in the litigation
and settlement of the several claims against Hartford should be allo-
cated between the claims in the same proportion as the settlement
proceeds are allocated. They further agreed that the fees allocated
to the claims that gave rise to taxable income are deductible as an
ordinary and necessary business expense, and that the fees allocated to
the claims that did not give rise to taxable income are not deductible.

*Decision will be entered under Rule 50.*