HARRY L. BOOKER AND BRENETTA BOOKER, PETITIONERS, *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

ORVILLE C. BOOKER AND GOLDIE V. BOOKER, PETITIONERS, *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58834, 58835.    Filed March 13, 1957.

*Fred M. Winner, Esq.*, for the petitioners.
*Ray H. Garrison, Esq.*, for the respondent.

935

OPINION.

WITHEY, *Judge:* Respondent has determined that the amount received by petitioners from Edward V. Dunklee on January 3, 1951, in settlement of their claims against him is taxable to them as ordinary income. Petitioners concede that the $15,000 amount received by them on that date in exchange for the release of their claims against Dunklee is reportable by them, but they contend that it is taxable only as long-term capital gain pursuant to section 117 (a) [1] of the Internal Revenue Code of 1939.

Since the taxability of an amount received pursuant to an agreement compromising a contested claim depends upon the nature of the claim and the actual basis of recovery, it is incumbent upon petitioners to demonstrate clearly the essential character of each of their claims against Dunklee. *Raytheon Production Corporation,* 1 T. C. 952, affd. 144 F. 2d 110; *Nicholas W. Mathey,* 10 T. C. 1099, affd. 177 F. 2d 259. If the amount received by the Bookers represented the settlement of a claim for ordinary income, it would be taxable as such, but if under any of the compromised claims petitioners sought recovery for the replacement of a capital asset, such amounts would be taxable under section 117 (a) of the 1939 Code as a return of capital. *Raytheon Production Corporation, supra; Commercial Electrical Supply Co.,* 8 B. T. A. 986.

It is clear from the record herein that the basis of the out-of-court recovery in question was an asserted breach of the option contract on the part of Dunklee.[2] Further, it is undisputed that the damages

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business) * * *

* * * * * * *

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income * * *

[2] On cross-examination by petitioner's counsel, Dunklee testified as follows (Transcript, p. 58) :

Q. Mr. Dunklee, in a nutshell. isn't it fair to say that the $15,000 payment you made to the Bookers was simply the compromise of a threatened lawsuit brought against you for breach of an option contract?

A. Yes, except that I didn't personally feel there was any breach.

Q. Well, I am not asking you to pass your judgment on a legal theory. I am asking you, Wasn't it a compromise of a threatened lawsuit?

A. Oh, I would say it was.

Q. And that the basis of the lawsuit was the breach of an option contract?

A. The basis of the lawsuit was, yes.

originally claimed by petitioners in the amount of $50,000 and finally compromised at $15,000, represented profits which the Bookers insisted would have been earned in the event the option had been exercised and reimbursement for additional rental expense anticipated because of the acquisition of new quarters.

It is settled law that amounts received pursuant to a settlement agreement on a claim for recovery of damages for loss of profits are taxable as ordinary income. *Raytheon Production Corporation, supra; Swastika Oil & Gas Co.*, 40 B. T. A. 798, affd. 123 F. 2d 382, certiorari denied 317 U. S. 639; *Commercial Electrical Supply Co., supra.*

In addition, without the increased rental expense caused by the relocation of their business, petitioners would have realized additional net profit which obviously would have been taxable to them as ordinary income. Consequently, amounts received as reimbursement for increases in anticipated operating expenses are taxable as ordinary income. *Baltimore & Ohio Railroad Co.*, 30 B. T. A. 194.

Petitioners insist that they transferred property in the nature of a capital asset to Edward V. Dunklee in exchange for the amount in question. In support of their position they rely on our decisions in *Isadore Golonsky*, 16 T. C. 1450, affd. 200 F. 2d 72, certiorari denied 345 U. S. 939; *McCue Bros. & Drummond, Inc.*, 19 T. C. 667, affd. 210 F. 2d 752, certiorari denied 348 U. S. 829; and *Louis W. Ray*, 18 T. C. 438, affd. 210 F. 2d 390.

In those cases we held that payments received by a lessee from his lessor in return for the cancellation of a lease or the surrender by the tenant of his right to remain in possession of the premises are made for the purchase of a capital asset and may be reported as capital gain by the lessee. In *Isadore Golonsky, supra*, we held that an amount received by the lessee from the owner of the premises for the accelerated cancellation of a lease constituted capital gain since the tenant's right to the use and possession of the unexpired term was a property right which thereby was transferred by him to the lessor.

*Louis W. Ray, supra*, involved the relinquishment by the lessee of a restrictive covenant contained in the lease which was preventing the owner from selling the reversion. In holding that the transaction constituted a sale of a capital asset under section 117 of the 1939 Code, we stated:

A lease of land is property and constitutes a capital asset in the hands of the leasehold owner and gain realized by him from its sale is capital gain. * * *

*       *       *       *       *       *       *

An agreement in a written lease which affects the use and enjoyment of the premises by the tenant, or is such as to benefit either the landlord or tenant by reason of his relation thereto, is a property right, being a covenant which runs with the land and is enforceable against not only the makers of the agreement, but their assigns. * * *

In *McCue Bros. & Drummond, Inc.*, *supra*, the taxpayer occupied business premises under a lease which expired during the taxable year in question, but it continued in possession as a statutory tenant under the New York emergency rent control laws. As a statutory tenant, the taxpayer had a right to remain in possession of the premises so long as it paid a reasonable rental. Its landlord paid it $22,500 to vacate and surrender the premises. We upheld the taxpayer's contention that it had transferred property rights to its landlord in exchange for the $22,500 received, and that the amount realized from the sale represented capital gain.

It is clear that none of the foregoing decisions is applicable to the facts here presented. At the time payment was made to petitioners pursuant to the compromise agreement, Edward V. Dunklee was not the owner of the premises in question and was not a landlord of petitioners. Petitioners at that time had vacated the premises covered by the option agreement with Dunklee. Moreover, the option agreement created no restrictive covenant running with the land as in *Louis W. Ray*, *supra*. Thus, Dunklee obviously did not acquire the right to the use and possession of the premises or the release from a covenant or restriction running with the land as in the foregoing cases. As a result of the settlement agreement with petitioners, he was not able to convey any greater right or clearer title to the property originally leased to petitioners, and subsequently disposed of, than he had already transferred. Dunklee acquired only the guaranteed freedom from threatened litigation in exchange for the $15,000 settlement payment made to the Bookers. Accordingly, the decisions upon which petitioners rely are readily distinguishable from the facts here in question.

It is clear that the contingencies which, under the terms of the option agreement, would create in petitioners prior rights of possession have never occurred. Further, the provisions of the agreement were characterized by the District Court of Adams County, Colorado, as being so vague and indefinite as to be unenforceable. In view of the fact that petitioners as optionees possessed nothing more than a mere expectancy, we are unable to conclude that the option contract in their hands constitutes property within the meaning of section 117 (a) of the 1939 Code.

Moreover, inasmuch as Dunklee was a party to the option contract and petitioners therefore could not transfer to him, as optionor, their contingent rights of priority to lease the premises previously owned by Dunklee, no contractual rights can be held to have been transferred to him. *Seth M. Milliken*, 15 T. C. 243, affirmed on this point 196 F. 2d 135. That Dunklee himself did not regard his payment to petitioners of $15,000 in exchange for the execution by them of a release

as a purchase of any rights under the option contract is clear from his testimony at the hearing:

Q. Now, I will ask you, Mr. Dunklee, to state whether or not it was your intention at that time to buy your option contract from the Bookers.

A. No, no. It was not. That didn't have anything to do with the option at all. It had to do with the settlement of the lawsuit for $50,000, that I thought was a wise thing to do, since I was going away, to settle it on the theory that the jury might bring in a compromise verdict for around $15,000, anyway. * * * [Transcript, p. 49.]

Thus, even if petitioners' inchoate rights under the option agreement were held to be in the nature of property under section 117 (a) of the 1939 Code, there was nevertheless no transfer of such rights so as to constitute a sale or exchange within the meaning of that section.

For the foregoing reasons, we hold that the amount received by petitioners on January 3, 1951, in compromise of their claims for damages is taxable to them as ordinary income under section 22 (a) of the 1939 Code.

*Decisions will be entered for the respondent.*