**FORDYCE v. HELVERING, Commissioner of Internal Revenue.**

No. 6283.

United States Court of Appeals for the District of Columbia.

Argued Jan. 14, 1935.

Decided Feb. 18, 1935.

Henry J. Richardson, of Washington, D. C., and Abraham Lowenhaupt, of St. Louis, Mo., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Robert H. Jackson, and Dean P. Kimball, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a petition to review a decision of the Board of Tax Appeals finding a deficiency against petitioner in his income taxes for the calendar year 1929.

There is a stipulation that the decision in this case shall control in the cases of Harriet Fordyce, H. C. Miller, Allen B. and Ruth E. Williams, T. E. Yemm, John H. Holliday, Wiley F. Corl, William R. and Ethel J. Hayes, and Thomas A. Reid, which cases were consolidated with this case before the Board of Tax Appeals.

The facts are agreed and show that petitioner was the owner of certain shares of class B common stock of the Commonwealth Utilities Corporation. On October 15, 1929, United Gas Improvement Company sent to all stockholders of Commonwealth an offer of exchange, under which it agreed to purchase up to 300,000 shares of Commonwealth B stock and to issue and deliver, in payment for each share, one share of United common stock plus $11 in cash. The offer was conditioned upon acceptance on or before November 22, 1929, by the owners of not less than 200,000 shares of class B stock then issued and outstanding and also two-thirds of the total of class B stock which Commonwealth was obliged to issue. Commonwealth also had outstanding 20,900 shares of other stock, which was preferred as to assets and dividends, but was without voting rights except in the event of default in six quarterly dividends.

To carry out the offer, and to provide a channel for the exchange, J. P. Morgan & Co. were appointed as depositary. Any owner of Commonwealth class B stock desiring to take advantage of the offer might do so by delivering his stock, within the time limit, to the depositary.

The stock certificates delivered were required to be indorsed in blank, and on delivery the depositary issued certificates of deposit exchangeable for United stock and cash if the offer should become effective, and United agreed that prior to November 27, 1929, it would in such case hand over to the depositary its shares of common stock and the cash required for the purpose of effecting the exchange; and the depositary was authorized thereupon to make delivery of the stock and cash to the holders of the certificates of deposit or their assigns.

Petitioner, for the purpose of taking advantage of the offer, delivered his Commonwealth stock to the depositary on or before November 12, 1929, and at the close of business that day the total number of shares of Commonwealth B stock deposited was 202,885 shares. This was not enough to make the agreement self-executing, but in the offer United had reserved an option to declare it effective prior to November 22d upon acceptance by the owners of less than the minimum named in the offer, and so on November 13, 1929, United exercised its option and declared the offer effective.

On November 15, 1929, the depositary wrote each depositing stockholder of Commonwealth, stating that the exchange offer had become effective and that the stock and cash required to be delivered under the agreement would be delivered not later than November 27, 1929, and requested that the certificates of deposit issued to depositing stockholders should, to facilitate the exchange, be forwarded to the depositary as soon as convenient. Petitioner received the cash and the certificates representing United stock on or after November 26, 1929,

and prior to December 31, 1929. The exact date is not shown. On November 13, 1929, the fair market value of United common stock was $24.62 per share, and on November 26th it was $29.94 per share. On December 31st Commonwealth had outstanding 3,164 shares of nonvoting class A common stock, of which United then owned 2,996 shares, and 277,672 shares of voting class B common stock, of which United then owned 269,533 shares; but at that time United owned none of the outstanding 20,949 shares of nonvoting preferred stock of Commonwealth and none of its property, and Commonwealth was then, and is still, in existence as a corporation.

Based upon these facts, petitioner contends that he exchanged his Commonwealth stock in connection with a merger or consolidation amounting to a reorganization of Commonwealth and United, and that under section 112 of the Revenue Act of 1928 (26 USCA § 2112) his gain is limited to the amount of cash which he received. In the alternative he contends that, if the acquisition by United of Commonwealth stock, as shown above, is not a "reorganization," then the United stock received by him should, for the purpose of computing his gain, be given its fair market value on November 13th and not on November 26th. The Commissioner found, and the Board sustained the finding, that the acquisition by United of Commonwealth voting stock did not constitute a reorganization within the meaning of section 112 and fixed the value of United stock at $29.94 per share, its quoted price on November 26th, instead of $24.62 per share, its quoted price on November 13th.

The applicable statutes are sections 111 and 112 of the Revenue Act of 1928 (45 Stat. 791, 815, 816 [26 USCA §§ 2111, 2112]).

Section 112 (b) (3), 26 USCA § 2112 (b) (3) provides that no gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

And (c), 26 USCA § 2112 (c), provides that, where the exchange is within the provisions of the preceding section, except that in addition to the receipt of stock the exchange includes also the payment of money, the gain, if any, shall be recognized in an amount not in excess of such money.

The statute (i), 26 USCA § 2112 (i), defines reorganization as "(A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation)."

No definition of the words "merger or consolidation" is contained in the act. The Board in its opinion said: "Our view is that, if the transaction is to come within the statutory definition at all, it must be by way of the parenthetical clause. The words in parentheses expand or enlarge the commonly accepted meaning of the basic words in the definition. * * * They mark the outside limits of the cases which would otherwise not ordinarily be considered mergers or consolidations. We may not enlarge them still more by grafting on situations which are beyond the scope of the words used. We are concerned here with that part of the definition which says that merger or consolidation includes 'the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.' These are irreducibly minimum requirements, and the transaction here does not meet them."

We concur in this view. In the case we are considering it will be remembered that United acquired substantially all of the voting stock of Commonwealth, but did not acquire a majority, or indeed any amount, of the nonvoting (preferred) stock. And it will likewise be remembered there was no corporate dissolution and no transfer of assets. Both corporations are still in existence. From this bare statement, it is manifest that there was no merger or consolidation within the ordinary meaning of those words, nor was there a reorganization as that word is defined by the act. Numerous definitions of the words "merger" and "consolidation" may be found in the reports, state and federal, but, though the definitions differ, there is practical agreement that, when employed to define forms of union between two corporations, a merger is said to take place when one of the corporations retains its existence and succeeds to the franchises and acquires the property and assets of the other; whereas a consolidation under similar circumstances occurs where all the corporations involved become extinct and go out of existence as separate organizations and a new

and different corporation is created to take over the assets of the dissolved corporations.

Judge Hand recently, in a case involving the statute we are here concerned with, defined the term "merger" as an "absorption" by one corporation of the properties and franchises of another whose stock it has acquired. In that case he said: "The merged corporation ceases to exist, and the merging corporation alone survives," and at the same time he defined the term "consolidation" as involving a dissolution of the companies consolidating and a transfer of corporate assets and franchises to a new company. Cortland Specialty Co. v. Commissioner (C. C. A.) 60 F.(2d) 937, 939.

Petitioner, however, insists that these definitions are technical, and that so to limit the words "merger or consolidation" defeats the purposes Congress had in mind and introduces such uncertainties into the law that ordinary and necessary business readjustments cannot go forward. He says they should be defined in a broader sense, and that, so understood, should be construed not to require a transfer of corporate assets or corporate dissolution. In short, he says that the acquisition by United of substantially all of the voting stock of Commonwealth caused the conduct of the affairs of the two companies to be permanently placed under one management, and that, using the words "merger" and "consolidation" conjunctively, the transaction comes directly within the provisions of section 112 (i) (1), 26 USCA § 2112 (i) (1). But this, we think, would be giving to words of general use and common understanding a strained and unnatural meaning, and one which Congress never had in mind. Nothing said in Pinellas I. Co. v. Commissioner, 287 U. S. 462–470, 53 S. Ct. 257, 77 L. Ed. 428, sustains petitioner's position in this regard.

█ We are therefore of opinion that the transaction which we have detailed did not constitute a "reorganization" within the meaning of section 112 of the Revenue Act of 1928. On the other hand, we are of opinion that the Board erred in deciding that the basic date for valuing the stock of United was November 26, 1929. We can find no section of the Revenue Act expressly providing what date shall be used in determining the fair market value of the property received. The Commissioner says it is the value of the property received, *when actually received,* and the Board,

adopting that view, held that, because under the exchange offer United had until November 26th to make delivery of its stock and cash to the depositary, and because petitioner was not entitled to demand the stock and cash prior to that date, he realized no gain until delivery was accomplished. But we think this is not the correct rule, or the one usually applied under the tax statutes. Wright v. Commissioner (C. C. A.) 50 F.(2d) 727–729; Burnet v. Sanford, 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383. On the contrary, as we think, petitioner's tax liability should have been determined as of the date when the real benefits and burdens of ownership were transferred, and this is true, notwithstanding such date is prior to that on which he received physical possession of the property acquired.

Petitioner delivered his stock to the depositary prior to November 13, 1929, and on that date stockholders of Commonwealth had deposited more than 200,000 shares of class B stock, and United, as it had a right to do, then declared the exchange of stocks effective on the terms of the deposit agreement. Petitioner had from the depositary a negotiable certificate exchangeable for common stock of United and cash, on the basis of the offer, and United on its part had agreed that, when the offer became effective "by acceptance or declaration," it would deliver to the depositary its common stock and cash required for the purpose of effecting the exchange. This was all done on the 13th and established the rights and liabilities of the parties, and we think it of no consequence that United had until the 27th for delivery of the shares and cash. When the conditions of the bargain were all met, as they were November 13th, and the contract became binding, petitioner lost all of his right to and control over the Commonwealth stock which he had delivered to the depositary, and at the same time had the unconditional promise of United to make delivery of the shares and money he was to receive in exchange. The exchange or sale, by whichever name it is called, then and there became binding on both parties, and the rights of both became fixed.

In this view, we agree with petitioner that the economic benefits of the property and money passed to him on November 13th, and the value on that date was the time test by which to determine the amount realized by him in the transaction. What

happened after that date conferred no new rights, and the subsequent delivery of the stock necessarily relates back to the time when the minds of the parties met and the agreement became complete. It was then that the parties to the exchange were clothed with beneficial ownership. The case is not at all like that of Lucas v. North Texas Lumber Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668. There the purchasing company gave notice that it would exercise the option given by the seller "as soon as the papers were prepared." The seller did not prepare the papers necessary to effect the transfer or make tender of title or possession, or demand the purchase price, until the subsequent year. "The title and right of possession remained in it until the transaction was closed." Consequently, as the Supreme Court said, "unconditional liability of vendee for the purchase price was not created in that year." But that is not this case. Here unconditional liability was created on November 13th, and all that remained to be done thereafter related to the mechanics of the transfer. Petitioner had surrendered his stock and his ownership therein had passed, and in its place he had a negotiable certificate equal in value to the shares of new stock he was entitled to demand.

Reversed in part, and remanded to the United States Board of Tax Appeals, with instructions to proceed in accordance with this opinion.