**COMMISSIONER OF INTERNAL REVENUE v. C. A. SPORL & CO., Inc.**

**No. 9696.**

Circuit Court of Appeals, Fifth Circuit.

March 20, 1941.

Warren F. Wattles, Hubert Will, and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., all of Washington, D. C., for petitioner.

Arthur A. Moreno and Felix W. Gaudin, both of New Orleans, La., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The respondent, C. A. Sporl & Company, Inc., is a Louisiana corporation engaged in the insurance brokerage business. From time to time it placed policies of insurance for Jahncke Dry Docks, Inc., one of its principal customers. The Jahncke Company was indebted to Sporl & Company on open account in the sum of $70,935.58. On September 8, 1931, Jahncke Company informed its general creditors that it could not immediately pay the full amount of its indebtedness to them; that it contemplated selling its dry docks equipment and converting its property into a storage warehouse; and that it expected to receive enough money from the sale to pay off part of its first mortgage bonds and have enough left to pay general creditors about twenty cents on the dollar. It proposed a settlement plan by which it would avoid foreclosure of its first mortgage and by which it would pay general creditors twenty cents on the dollar in cash, and issue to them six per cent second mortgage bonds at par for the balance of their indebtedness.

The settlement offer was accepted and on October 13, 1931, Sporl & Company received the twenty per cent cash payment of $14,235.50 with the agreement and understanding that Jahncke would issue bonds of the par value of $56,700 for the balance of the indebtedness. Thereafter Jahncke Dry Docks, Inc., changed its name to Shipside Storage Company, and in February 1932 Sporl & Company received Shipside Storage Company second mortgage bonds of the par value of $56,700. These bonds bore date of January 1, 1932, and were issued pursuant to the agreement of October 13, 1931.

Upon receipt of the bonds Sporl & Company gave $10,700 of them to insurance companies to discharge a like amount of indebtedness. It held the remaining $46,000 of bonds until December 26, 1933, when it sold them for $6,900, their then fair market value. In its income tax return for 1933 Sporl & Company claimed a deduction of $39,100 as a loss sustained upon the sale of the bonds. The commissioner disallowed the deduction and asserted a deficiency in income and excess profits taxes for the year in question. The taxpayer filed petition for redetermination of the deficiency, and the Board of Tax Appeals, after a hearing, determined that the $39,100 had been properly claimed by the taxpayer as a loss sustained from the sale of capital assets, and that there was no deficiency in income or excess profits taxes for the year. C. A. Sporl & Co., Inc. v. Commissioner, 40 B.T.A. 829.

Section 101(c) (8) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 505, defines "capital assets" as "property held by the taxpayer for more than two years * * *." The commissioner contends that since the taxpayer actually received the bonds in February 1932 and sold them twenty-three months later, in December 1933, it had not held them for more than two years within the meaning of this section; that, therefore, the loss was not a loss sustained upon the sale of "capital assets" as that term is defined by the statute; and that the limitation of Section 23(r) (1) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 493, applies.

The holding period for the purpose of Section 101(c) (8) begins to run from the time the bonds were acquired by the taxpayer. McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A. L.R. 304. On October 13, 1931, more than two years prior to the sale of the bonds, Sporl & Company relinquished its rights as a general creditor of Jahncke Dry Docks, Inc., and acquired the rights of a second mortgage holder. It accepted the cash payment of $14,235.58, agreed to accept bonds for the balance, and the dry docks company definitely obligated itself to deliver to Sporl & Company second mortgage bonds of the par value of $56,700.00. The rights of the parties became fixed on October 13, 1931, although the bonds evidencing the rights of Sporl & Company were not issued until four months later. It is clear that the assets which were sold in December 1933 by the taxpayer were acquired and held for more than two years prior to their sale, and that they were "capital assets" within the definition of Section 101 (c) (8). Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Fordyce v. Helvering, 64 App.D.C. 181, 76 F.2d 431.

The commissioner further contends that the taxpayer failed to present evidence as to the cost or value of the bonds at the time of their acquisition, and that it, therefore, failed to establish a basis for computing loss. The bonds with a par value of $56,700 were received in a dollar for dollar exchange for the open

account. The evidence supports the Board's finding that the bonds were received by the taxpayer at a cost of $56,700, and that upon the sale in 1933 of $46,000 par value of these bonds the taxpayer sustained a loss of $39,100. The findings of the Board are supported by substantial evidence and will not be disturbed. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289.

The decision of the Board is affirmed.