Paul E. DORMAN and Wineta E. Dorman,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 17144.

United States Court of Appeals
Ninth Circuit.

Nov. 27, 1961.

Sidney W. Robinson, Reno, Nev., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum and John A. Bailey (argued), Attys., Dept. of Justice, Washington, D. C., Howard W. Babcock, U. S. Atty., and Chester C. Swobe, Asst. U. S. Atty., Reno, Nev., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This case arises upon a claim for refund of taxes paid. The district court had jurisdiction under 28 U.S.C. § 1346, while this court's jurisdiction over the appeal rests upon 28 U.S.C. §§ 1291 and 1294. Although this case involves both Paul and Wineta Dorman, as husband and wife, the controlling facts involve only Paul Dorman; thus references below will be in the singular to Dorman or "appellant."

In January 1952 appellant Dorman and William Holmes became associated with each other for the purpose of acquiring a livestock ranch in Nevada. On January 24, 1952, they took an option to purchase a cattle ranch. Two days later they exercised the option, Holmes paying $150,000 into escrow. On the same day, appellant entered into an agreement with Holmes which provided for the formation of a partnership to commence on April 1, 1952. On February 25, 1952, Holmes paid $350,000 more into escrow, and title to the realty involved passed to the prospective partners on March 1, 1952.

Appellant Dorman contributed no cash to the partnership. His "capital contribution" of $300,000 was lent to him by Holmes and was evidenced by six promissory notes payable to Holmes. The notes were payable only out of appellant Dorman's share of the profits, and the partnership agreement provided that Dorman's interest in the assets of the partnership was not to be "deemed * * * a

fully paid vested interest" until the promissory notes were paid off. (See Conclusion of Law No. 7, Rep. p. 31.)[1] Since Dorman never paid off any of the notes and never made any other capital contribution, he never acquired a fully paid vested interest. The partners did obtain a $100,000 loan from Prudential Insurance Company, but this loan was ultimately paid off by Holmes, as he was required to do by the dissolution agreement, Dorman contributing nothing to its discharge.

Dorman was to devote his full time to managing the business, and he was given a salary of $10,000 per annum which was to be paid, as a business expense, before any division of the profits. Holmes was required to devote no time to the partnership business.

On August 29, 1952, Holmes and Dorman agreed to dissolve the "partnership", as of August 31, 1952. Their agreement valued the "partnership" assets at $624,940, and Holmes accordingly purchased Dorman's interest for $312,470, paying $300,000 of this amount by cancellation of Dorman's debt. The additional $12,470 was paid to Dorman in the form of a promissory note executed by Holmes.

In his 1952 individual tax return, Dorman treated the $12,470 paid to him by Holmes as a *long term* capital gain from the sale of a partnership interest. And he took as a deduction one half of the partnership's $79,857.46 operating loss. He also showed the receipt of salary in the amount of $4,999.98. The Commissioner determined that the payment from Holmes was ordinary income, and he disallowed the deduction for the operating loss. A deficiency was assessed and Dorman paid it. He then brought this suit for refund in the district court, and he now appeals from that court's decision.

This case thus presents two main issues:

1. Is the $12,470 payment by Holmes to Dorman a long term capital gain?

1. These notes are not in evidence, but reference to them is found in the dissolution agreement (Plaintiff's Ex. 12; R. p. 52) which refers to the notes as dated February 11, 1952; February 13, 1952; March 3, 1952; March 11, 1952; March 25, 1952; April 3, 1952; totaling $300,000.

2. Is Dorman entitled to share in the partnership's operating loss deduction?

As to the first issue, the district court recognized that a partnership interest is ordinarily considered to be a capital asset and that its sale ordinarily gives rise to capital gain. But the court pointed out, the sale of a capital asset cannot be used to convert anticipated income into capital gain. Furthermore, Dorman did not have a vested interest in the partnership; he had only the contractual right to acquire such interest, upon payment of the six promissory notes. So the trial court held that whatever the payment in question represented, it was not gain on the sale of a capital asset. The court described the payment as a form of salary or separation pay.

Appellant presents argument and authority to support the proposition that a partnership interest is a capital asset and that its sale generates capital gain or loss. No one disputes this rule and appellant's argument in this regard is beside the point. The trial court did not hold that the sale of a partnership interest does not give rise to capital gain; it held, rather, that appellant had no partnership interest to sell. It cannot be said that the trial court erred in so holding. The very terms of the partnership agreement provided that appellant was to have no vested interest in the partnership until certain conditions precedent were fulfilled —and these conditions, admittedly, had not been fulfilled.

■ But we cannot agree with the trial court that appellant's only status with respect to the partnership was that of an employee who was paid separation pay. Before the dissolution of the partnership, appellant had in addition to his salaried position a contractual right to acquire an interest in the partnership and to receive a share of the partnership profits (Conclusion of Law No. 7, R. p. 31). In other words, he had an interest in an executory contract. In reality, it was this executory contract which Holmes bought from appellant for $12,470. And it is clear that an executory contract is a capital asset. (Levenson v. United States, N.D.Ala.1957, 157 F.Supp. 244, 249; Commissioner v. Goff, 3 Cir.1954, 212 F.2d 875, cert. denied, 348 U.S. 829, 75 S.Ct. 52, 99 L.Ed. 654.) This point was not originally raised by either of the parties on this appeal. For that reason, we set aside our order of submission made after oral argument on September 7, 1961, and requested respective counsel to file simultaneous briefs on this one issue. The matter was then resubmitted as of November 1, 1961.

■ These briefs we have received and considered. The government urges:

(1) That the agreement of January 26, 1952, was no longer executory in August, because the taxpayer's rights had terminated by the formation of the contemplated association;

(2) that even if there had been a disposal of taxpayer's interest in an executory contract which *was* a capital asset, which had been held six months, there was no "sale or exchange" within the meaning of § 117 (a) (4) of the 1939 Code, 26 U.S.C.A. § 117(a) (4), and

(3) alternatively, the taxpayer's rights were not "capital assets" within the meaning of § 117(a) (1) of the 1939 Code.

We cannot agree with the government's position. It urges that the parties agreed in January 1952 to enter into a partnership at the subsequent date of April 1, 1952, and "having complied with such agreement, their January agreement had been carried out and was no longer executory in August" when the parties severed their relationship. But the district court, as we have seen before, held the partnership had not come into existence, because by the terms of the agreement appellant was to have no vested interest in the partnership until certain conditions had been met, which event never occurred. Taxpayer had something more extensive than a mere employment contract. A right to acquire, in the future, "a fully paid vested interest" is surely more akin to the situation where one has a capital interest,

rather than to one where there is mere employment, where the employee has no right, present or future, to acquire such a capital interest. This right, or "option," to acquire a capital interest represents more than a *possibility* of receiving ordinary income in the future. It presents taxpayer a present opportunity to realize future capital gains, if any there be. And unlike Commissioner v. P. G. Lake, Inc., 1958, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, the $12,-470 payment to taxpayer was in no respect "present consideration received by the taxpayer for the right to receive future income," but was paid in recognition of an already existing increase in the value of income producing property (either a partnership, ruled out by the district court, or a right to acquire an interest therein, as we here hold).

Nor can we hold the taxpayer's interest, which he gave up for the $12,470 note, merely "vanished." His executory right came to an end, but in exchange he received the value of the note. *Here there was no conversion of future income into present income*, as was the case in Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Commissioner v. P. G. Lake, Inc., supra; Leh v. Commissioner, 9 Cir., 1958, 260 F.2d 489 (involving a gasoline distribution contract); Commissioner v. Starr Bros., 2 Cir., 1953, 204 F.2d 673 (involving a termination of an exclusive agency contract); or Bingham v. Commissioner, 2 Cir., 1939, 105 F. 2d 971 (involving payment of a note). This more closely resembles the cases involving the surrender of a lease to a lessor. (Cf. discussion and cases cited, Leh v. Commissioner, supra, 260 F.2d, p. 492.)

By reason of our belief there here existed no conversion of future income, into present income, we do not find convincing the cases supporting the government's alternative, and third position; that taxpayer's right was not a capital asset.

The Commissioner argues that when a partner makes no capital contribution, any income which he receives on termination of the partnership is taxable as ordinary income (citing Bull v. United States, 1935, 295 U.S. 247, 254, 55 S.Ct. 695, 79 L.Ed. 1421; Wener v. Commissioner, 9 Cir., 1957, 242 F.2d 938; Trousdale v. Commissioner, 9 Cir., 1955, 219 F.2d 563). But this proposition is inconsistent with the trial court's holding that appellant had no partnership interest at all. We are not dealing here with the retirement of one who has been a partner. The Commissioner's argument is inapplicable to the facts of this case. Furthermore, the cited authority does not support so broad a proposition as that urged by the Commissioner. At most the cases hold that a partner cannot convert accrued income (accounts receivable, e. g.) into capital gain by selling his interest in the partnership (see especially Trousdale v. Commissioner, supra, at 566).

The Commissioner asserts, however, that the $12,470 payment must be regarded as compensation for services as the trial court found it to be. But this interpretation overlooks the fact that appellant had an interest in the partnership beyond that of a mere salaried employee. To accept the Commissioner's view is to arbitrarily refuse to place any value upon appellant's contractual rights to become a partner, and to receive a share of partnership profits. Furthermore, regarding the $12,470 payment as compensation for past services ignores the fact that appellant was otherwise to be compensated for his services at the rate of $10,000 a year, and that he did receive such a salary for the part of the year that he actually served as manager. To consider the payment as compensation for *accrued* profits is erroneous because there were no such profits; at the time of dissolution no income had, as yet, been realized by the enterprise (Finding No. 11, R. p. 28). To the extent that the Commissioner regards the payment in issue as compensation for the loss of *future* profits (brief, p. 18, l. 23), we agree with him. But this assertion supports the view that appellant was being compensated for the relinquishment of contractual rights,

which are capital assets, and that he was receiving a capital gain.[2]

But our conclusion that appellant received the payment of $12,470 in exchange for a capital asset does not dispose of this aspect of the controversy. If the asset sold was held for less than six months, then the gain will still be taxed at ordinary rates. In the view we have taken, the asset sold was an executory contract. The holding period for such an asset obviously commences when the appellant acquired rights under the contract; i. e., when the contract fixed the rights of the parties. Commissioner v. C. A. Sporl & Co., 5 Cir., 1941, 118 F.2d 283, 284; Giustina v. United States, D. C.Or.1960, 190 F.Supp. 303. Cf. Paul v. Commissioner, 3 Cir., 1953, 206 F.2d 763, 765. In the case at bar, the parties entered into the contract on January 26, 1952. Since the "partnership" was not terminated until August 31, 1952, appellant held the contractual rights for the required six months' period and should be entitled to treat his gain on the sale of such rights as a long term capital gain.

In the view which the trial court took in this case, there was no sale of a capital asset. The trial court held, however, that even if the transaction could be regarded as the sale of a partnership interest, appellant did not hold that interest for the required six months. The court found that the partnership did not come into existence until April 1, 1952; while appellant claims that the partnership came into being not later than February 25, 1952 (Opening brief, p. 17), the date on which Holmes paid the balance of the purchase price for the property.

When the "partnership" commenced is, of course, a question of fact, and we are bound by such finding unless the finding is clearly erroneous. Although there is evidence that Holmes and Dorman "acted like" partners before April 1, 1952, the fact that this date was specified in their agreement as the date of commencement is very strong evidence that there was no partnership relationship until that time. In view of this strong evidence, we do not think that the trial court committed clear error in finding that the partnership did not commence until April 1, 1952. This conclusion, however, does not resolve this issue, for, as appellant correctly asserts in his reply brief (p. 6), a partner who acquires his partnership interest by contributing property may include in his holding period the holding period of the contributed property (see 6 Mertens, Law of Federal Income Taxation, § 35.60). This legal conclusion, however, cannot advance appellant's cause, for appellant did not acquire his partnership interest by contributing any property. The trial court found that all of the capital needed to purchase the business was contributed by Holmes (Finding No. 4, R. p. 25). If appellant acquired an interest in the partnership, it was only by the execution of the six conditional notes to Holmes as provided by the partnership agreement. And this fact is not altered by the circumstance that appellant along with Holmes received title to the partnership's real property before the formation of the partnership. Appellant did not acquire his partnership interest by contributing real property which he never paid for.

We conclude that the court held correctly that appellant never received a partnership interest. Thus the closing transaction did not and could not represent the sale of a partnership interest, and the payment made in this connection could not represent gain upon the sale of a partnership interest. We hold the court erred, however, in characterizing the payment as salary or severance pay. Such an explanation ignores numerous relevant facts, and fails to take into account the significant fact that appellant gave up valuable contractual rights when the

2. There is also some authority for the proposition that the right to receive unaccrued profits is a capital asset and that the sale of such a right produces capital gain (rather than ordinary income). (See 3 B, Mertens, Law of Federal Income Taxation § 22.36.)

"partnership" was terminated. The relinquishment of these rights constitutes the sale of a capital asset (Commissioner v. C. A. Sporl & Co., supra), and the gain upon the sale constitutes capital gain. (Cohn v. United States, 6 Cir., 1958, 259 F.2d 371; Levenson v. United States, supra. See also: 26 U.S.C. §§ 1221, 1222 (1) and (2).) Since the rights were held for more than six months, the gain should be taxed as long term capital gain. Therefore, we reverse the trial court's decision on the first issue.

On the second issue, that of an operating loss, we find that the partnership sustained an operating loss of $79,857.46. Appellant claims a deduction for half of this loss, asserting that such was his distributive share of partnership losses. The court properly, we believe, disallowed this claim.

Appellant did not, as we have seen, have an interest in the partnership. He had merely certain rights and obligations under a contract. Even if that contract obligated appellant to share business losses, the fact is that he never fulfilled that obligation. The losses were paid by Holmes. To allow appellant a deduction for the business loss would ignore the facts that he was not a partner and that he did not, in reality, incur any loss—to the contrary, he obtained a profit in the transaction.

If we assume, arguendo, that appellant had a partnership interest and that the partnership agreement required a sharing of losses, the trial court's conclusion must still be sustained. The partners can, by agreement, alter their initial partnership undertaking (see Hood v. Commissioner, 19 B.T.A. 962). In the instant case, if appellant was obligated to share partnership losses, that obligation was extinguished by the termination agreement which relieved appellant of any further liability (Plaintiff's Ex. 12).

Indeed, the termination agreement provided appellant was a sizeable gain for the sale of his interest. In fact, then, the partnership undertaking was altered and appellant was relieved of any duty to share losses and, in actuality, he bore none.

Appellant asserts, however, that in fact such was not the case. Appellant claims that the purchase price for his interest took into account the existence of the operating loss. Had there not been such a loss, appellant would have received a much higher price for his interest when the partnership was terminated. Thus, in reality, appellant claims, he did bear a portion of the operating loss. Even if this is so, however, the district court's decision on this issue must be affirmed. Any loss which appellant realized would be subtracted from the basis of his partnership interest (Anton M. Meyer, 3 B.T.A. 1329, 1333). When he sold his interest upon dissolution of the partnership, he realized a gain to the extent of the prior reduction in basis. As we have seen, this gain would be short term gain taxable at ordinary rates. It would, thus, offset precisely the amount of any allowable deduction.

We conclude on the second issue that appellant was not a partner, and therefore cannot claim any portion of the partnership's operating loss deduction. Even if he were held to have been a partner, the partnership agreement was altered so that he was not, in fact, required to bear the loss. Thus, under any view of the facts, appellant is not entitled to any portion of the operating loss deduction. We therefore affirm the trial court's decision on this second issue.

The matter is reversed in part, and affirmed in part, and remanded for entry of judgment below in accordance with this opinion.