NATHAN PUTCHAT AND SALLY PUTCHAT, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1896–64.    Filed June 18, 1969.

*Robert B. Alexander, Jr.*, for the petitioners.
*Gerald Backer*, for the respondent.

472

474

## OPINION

Petitioners contend that by way of settlement of a lawsuit they received $75,000 in exchange for the release of certain capital assets consisting of the right to acquire stock and the right to earn uncertain future profits. That portion of the amount in excess of costs incurred in litigation, they argue, constitutes capital gain. Respondent characterizes the $75,000 as consideration for the cancellation of an employment contract which is taxable as ordinary income and contends that no option under the agreement ever existed. In the alternative, respondent contends that, if an option under the agreement did exist, the surrender of the option right did not constitute a "sale or exchange."

The legal principles applicable to this controversy depend entirely upon a single, essentially factual determination, i.e., the nature of the option granted to petitioner under the agreement. We think the record is clear that the option to purchase Builders stock at a bargain price constituted compensation for services relating to subcontract work

on the atomic energy project rendered by petitioner to Builders. The following factors support this conclusion: (1) Without the services of petitioner whose corporations were experienced in general construction, Charles Simkin & Sons, Inc., could not have qualified for subcontracts on the atomic energy project; (2) $300 per week and 20 percent of net profits alone were not adequate compensation for the services to be performed by petitioner under his agreement with Builders and Charles Simkin & Sons, Inc.;[1] (3) the option was to become effective only after the satisfactory completion of petitioner's duties with respect to the atomic energy project; (4) the option was nontransferable and would have expired upon petitioner's death; and (5) the option was characterized as compensation in the agreement.

We are not persuaded by petitioner's assertions that the corporations controlled by him and Charles Simkin & Sons, Inc., became joint venturers or that he was a founder and incorporator of Builders, contributing to it the assets of his controlled corporations. It was Simkin who was the prime mover behind the Builders concept, and he needed petitioner as an employee to make it work. The few assets of petitioner's controlled corporations utilized by Builders were either purchased or borrowed and then returned; only a relatively small number of employees became employees of Builders. Petitioner has failed to establish that any consideration provided for in the agreement was attributable to his contribution to Builders of his proprietary interests in the controlled corporations.

This factual determination effectively distinguishes this case from the cases upon which the petitioner principally relies, viz, *Turzillo* v. *Commissioner*, 346 F. 2d 884 (C.A. 6, 1965), and *Dorman* v. *United States*, 296 F. 2d 27 (C.A. 9, 1961).

The concept of "gross income" is "broad enough to include in taxable income any economic or financial benefit conferred on the employee

---

[1] The following testimony was given at trial by petitioner in response to questions propounded by counsel for respondent:

Q. How long had you been working for Associated Builders?
A. Since April of 1958.
Q. What were you getting paid?
A. $300 a week.
Q. Did you feel that adequate compensation for your services?
A. No.
Q. You felt that the 20 percent of the profits was certainly—
A. No, my big interest was in the stock equity.
Q. Would 20 percent of the profits satisfy you with respect to the compensation; in other words, Clause 4–F, what we are talking about now?
A. No, not completely.
Q. You wanted more compensation than that?
A. I wanted what my contract gave me.
Q. What more compensation did you want?
A. The equity interest.
Q. You wanted that given to you as additional compensation?
A. That's right.

as compensation, whatever the form or mode by which it is effected." *Commissioner* v. *Smith*, 324 U.S. 177, 181 (1945). It follows that, absent any specific statutory provision to the contrary,[2] the granting of a stock option as an incentive [3] at a bargain price results in ordinary income to the employee to the extent of the gain realized. *Commissioner* v. *LoBue*, 351 U.S. 243 (1956).

As stated in *Spangler* v. *Commissioner*, 323 F. 2d 913, 916 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court:

> In determining whether receipts are taxable as ordinary income or return of capital it is immaterial whether taxpayer effected collection amicably or by resolving a dispute through compromise or litigation. It is the nature of the underlying claim that controls and not the manner of collection.[4] [Footnote omitted.]

Petitioner's suit in equity was primarily for the protection of his contract rights to be employed as project manager, to receive 20 percent of net profits of completed work, and to exercise the stock option. We believe these rights were essentially compensatory in nature, and any consideration for their release should stand upon the same footing. *Albert C. Becken, Jr.*, 5 T.C. 498 (1945); *W. W. Sutton*, 35 B.T.A. 348 (1937). See also *Carter's Estate* v. *Commissioner*, 298 F. 2d 192 (C.A. 8, 1962), affirming 35 T.C. 326 (1960); *Mathey* v. *Commissioner*, 177 F. 2d. 259 (C.A. 1, 1949), affirming 10 T.C. 1099 (1948).

Section 421, I.R.C. 1954, provides that no income will result upon the transfer of stock to an employee pursuant to his exercise of a qualified stock option (sec. 422), of an option granted under an employee stock purchase plan (sec. 423), or of a restricted stock option (sec. 424). Petitioner never exercised or attempted to exercise the option granted to him by the agreement, nor did he ever receive any Builders stock.[4] The provisions of section 421 are, therefore, inapplicable to the instant case, rendering operative the provisions of section 1.421-6, Income Tax Regs., which provide as to scope of coverage, "When an option is granted for any reason connected with the employment of an employee, this section applies, if section 421 does not apply."

The option held by petitioner was not actively traded on an established market, nor could its fair market value be measured with reasonable accuracy. The release executed by petitioner constituted an arm's-length "transfer" of his option rights. See *Commissioner* v.

---

[2] See the discussion *infra* relating to subsequently enacted secs. 421 through 424, I.R.C. 1954.

[3] Simkin testified that, by granting an option to petitioner, "we thought we would give him an inducement to do a good job for us."

[4] Petitioner makes no argument that he constructively received the shares of stock of Builders, and we find no justification for so holding. See *Albert C. Becken, Jr.*, 5 T.C. 498, 503 (1945).

*Ferrer*, 304 F. 2d 125 (C.A. 2, 1962). Section 1.421–6(d)(3), Income Tax Regs., provides:

(d) *Options without a readily ascertainable fair market value.* If there is granted an option to which this section applies, and if the option does not have a readily ascertainable fair market value at the time it is granted, the employee in connection with whose employment the option is granted is considered to realize compensation includible in gross income under section 61 at the time and in the amount determined in accordance with the following rules of this paragraph:

\*      \*      \*      \*      \*      \*      \*

(3) If the option is not exercised by the person to whom it was granted, but is transferred in an arm's length transaction, the employee realizes compensation in the amount of the gain resulting from such transfer of the option, and such compensation is includible in his gross income in accordance with his method of accounting.

Predicated upon our determination that the granting of the option to petitioner was "connected with his employment," the foregoing regulation, the validity of which petitioners do not question, is, on its face, dispositive of the issue presented. Accordingly, we hold that the net income of $58,433.36 received by petitioner is taxable as ordinary income.

*Decision will be entered for the respondent.*