WILLIAM R. CRISP, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Crisp v. Commissioner
Docket No. 7429-70
United States Tax Court
T.C. Memo 1973-6; 1973 Tax Ct. Memo LEXIS 281; 32 T.C.M. (CCH) 24; T.C.M. (RIA) 73006; January 9, 1973, Filed James A. Carter and W. Truett Smith, for the petitioner. Bernard B. Nelson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION
SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the amount of $13,677.33 for the calendar year 1966. The issue for decision is whether $47,500 of an amount of $50,000 paid by Cities Service Oil Company to petitioner during the calendar year 1966 constituted ordinary income or capital gains. 2 FINDINGS OF FACT
Some of the facts have been stipulated and are found accordingly. William R. Crisp (hereinafter called petitioner) was a legal resident of San Angelo, Texas on the date of the filing of the petition herein. Petitioner filed his Federal income tax return for the taxable year ended December 31, 1966 with the district *282 director of internal revenue, Dallas, Texas. Texas Power and Light Company (hereinafter referred to as TP&L) operated the Lake Creek Generating Station in McLennan County, Texas. TP&L's wholly-owned subsidiary, Bi Stone Fuel Company (hereinafter referred to as Bi Stone) supplied the Lake Creek Station with unprocessed gas which was used by TP&L for fuel for its generators. However, the use of the unprocessed gas caused TP&L to encounter certain operational difficulties. Joseph Shoaf (hereinafter referred to as Shoaf) became aware of the operating difficulties of TP&L in the late 1950's. Shoaf was of the opinion that processing the gas used by TP&L to run its generators would provide TP&L with a better and more efficient fuel and at the same time the processing plant could recover liquifiable hydrocarbons such as natural gasoline, butane, propane and ethane, which could be sold. Shoaf approached petitioner sometime in 1962 with his idea for developing and building a gas processing plant to process Bi Stone 3 fuel delivered to TP&L near Waco, Texas. Shoaf provided petitioner with a feasibility study he had prepared and petitioner obtained samples of the Bi Stone fuel *283 and ran an analysis of his own. Petitioner and Shoaf entered into an oral agreement to split the costs and proceeds of the development of the proposed gas processing plant near Waco, Texas (hereinafter referred to as the Waco project) on an equal basis. Petitioner paid the sum of $2,500 to Shoaf by check dated December 15, 1966, in reimbursement of expenses incurred by Shoaf in making the feasibility study. Petitioner and Shoaf contacted TP&L with the proposal of building the processing plant and procuring the contractual rights to process all of the Bi Stone fuel used by TP&L. TP&L declined to enter into an agreement with petitioner and Shoaf and suggested that an agreement would be feasible if petitioner and Shoaf were associated with a substantial firm such as a major oil company. Thereafter petitioner and Shoaf contacted Shell Oil Company and Cities Service Company (hereinafter referred to as Cities Service) in an effort to form an association with one of those companies in the development of the gas processing plant project. Between November 1963 and June 1964, various proposals were put forth by Cities Service concerning the development of the gas processing plant. *284 However, an agreement did not materialize until June 16, 1964. 4 Petitioner and Shoaf entered into a letter agreement dated June 16, 1964 with Cities Service. The agreement contained the following provisions: 1. Plant to be constructed and owned by Waco Gas Products, Limited, a limited partnership, to be formed under the Texas Uniform Limited Partnership Act and to consist of Cities Service Oil Company, as General Partner, and Joseph Shoaf and W. R. Crisp, as Limited Partners. 2. Cities Service Oil Company, as General Partner, to construct and operate the plant and conduct business of the partnership. 3. Capital contributions and participation in the partnership to be: Cities Service Oil Company - 60% Dr. Joseph Shoaf - 20 Mr. W. R. Crisp - 20
4. Initial plant investment estimated to be approximately $1,000,000 for plant to process 50 MMCF/D at 75% propane recovery. 5. Cities Service to assist Shoaf and Crisp, Limited Partners, in arranging suitable financing for their capital contributions. Articles of Limited Partnership and an Agreement to Construct and Operate the Gas Processing Plant were prepared by Cities Service and forwarded to petitioner for review *285 and execution. Petitioner, Shoaf and Cities Service never executed the Articles of Partnership. However, the provisions of the proposed Articles of Limited Partnership antd the execution of a limited partnership agreement were the subject of correspondence between petitioner and Cities Service as late as April of 1966. Petitioner and Shoaf assisted Cities Service in negotiating an agreement with TP&L. On December 17, 1965, Cities Service entered 5 into a Processing Agreement with Bi Stone Fuel Company. The Processing Agreement gave Cities Service the right to process all Bi Stone gas in the pipeline serving the Lake Creek Station. In turn, Cities Service agreed to purchase the by-products recovered in the gas processing at stipulated prices. In connection with the Processing Agreement a lease was executed on February 14, 1966 between Cities Service and TP&L. The lease agreement provided Cities Service a leasehold interest in the land on which it would construct the gas processing plant. The term of the lease was 20 years commencing on the date that construction of the processing plant was completed. Between the period of June 16, 1964 and April 21, 1966, petitioner *286 was financially capable to contribute the 20 percent capital investment required by the letter agreement of June 16, 1964. However, Shoaf was unable to make his required capital contribution in accordance with the letter agreement of June 16, 1964. As of April 21, 1966, neither petitioner nor Shoaf had actually contributed their respective required capital investments of 20 percent of the anticipated initial plant investments of $1,100,000. Some time prior to April 21, 1966, Shoaf assigned his 20 percent interest in the gas processing plant project to Mapco Production Company (hereinafter referred to as MAPCO) for which Shoaf received the sum of $50,000. However, the agreement between MAPCO and Shoaf was rescinded 6 because Cities Service objected to MAPCO's acquisition of Shoaf's interest in the gas processing plant project. Thereafter Cities Service offered to purchase the interests of petitioner and Shoaf in the project but would not agree to purchase Shoaf's interest without also acquiring petitioner's interest. On April 21, 1966, petitioner and Shoaf received and executed a letter agreement with Cities Service. The letter agreement, dated April 21, 1966, provided *287 as follows: Reference is made to the Cities Service Oil Company ("Cities") letter dated June 16, 1964. Your acceptance of such letter confirmed generally an agreement between you and Cities relating to the construction and operation of a gas processing plant to be located near Waco, Texas, such plant to process fuel gas being delivered to the Lake Creek Power Plant of Texas Light and Power Company. Pursuant to such letter of June 16, 1964, Cities agreed to assist you in arranging suitable financing necessary to satisfy your capital contribution commitments (Cities - 60%; Shoaf and Crisp - 20% each) to be undertaken at such time as construction commenced. Your and Cities' joint efforts heretofore made to secure financing required have not proven (in your judgment) adequate to secure capital sufficient to meet your needs as participants in the project. It is recognized, however, that your contribution to the overall project serves to establish the basis for a claim to certain rights and interests in and to such project and we hereby propose to acquire any and all such rights and interests as you may have or claim by tendering you a lump sum payment of $100,000.00. Your execution *288 in the space provided below will acknowledge sufficiency of such sum and your receipt thereof will evidence your agreement to execute an assignment (in the form attached hereto) to Cities of any and all contract and/or property rights of every kind and character which you may claim or assert with respect to the proposed construction and operation of the herein referred to gas processing plant; and, your execution hereof will confirm your agreement that you will execute and deliver further evidence of such assignment and transfer as Cities may reasonably request in this 7 regard. By acceptance of such payment you thereby confirm that you thereafter and forevermore release Cities of and from all manner of claims and actions, debts, sums of money, suits, controversies or damages of whatsoever kind or nature, for or because of any matter or thing done or omitted by Cities prior to the date hereof. It is understood that in the event either of you fail to execute and return a copy of this letter to the attention of the writer within five (5) days from the date hereof the offer of payment hereby made may be withdrawn at Cities' election and any further obligation with respect thereto *289 thereby terminated. Petitioner and Shoaf accepted and agreed to the terms of the letter dated April 21, 1966. On April 21, 1966, petitioner and Shoaf each executed an assignment whereby each assigned his respective contract and/or property rights in the gas processing plant to Cities Service in consideration of the sum of $50,000. Cities Service paid the sum of $50,000 to petitioner in 1966 and petitioner reported the $47,500 of the amount received as long-term capital gain on his income tax return for the calendar year 1966. Respondent in his notice of deficiency determined that $47,500 of the amount received by petitioner from Cities Service constituted ordinary income. OPINION
Petitioner contends that the amount of $50,000 received by him from Cities Service was the proceeds from the sale of a capital asset and that he is entitled to treat the $47,500 of gain on the sale of this asset as capital gain. Petitioner contends that he had certain property and contract rights in the gas processing plant project 8 which constituted a capital asset and that he sold this asset to Cities Service. Respondent urges us to conclude that no such capital asset existed and that *290 the $50,000 received by petitioner was in payment for services performed in initiating and setting up the project. [1]
Section 1221, I.R.C. 1954, defines a "capital asset" as "property held by the taxpayer (whether or not connected with his trade or business)," with certain exclusions not here pertinent. Although the definition of "capital asset" is broad, it has long been settled that "not everything which can be called property in the ordinary sense and which is outside the statutory exclusions qualifies as a capital asset." Commissioner v. Gillette Motor Co., 364 U.S. 130, 134 (1960). If an amount is received as a substitute for ordinary income, even though a property right is technically surrendered in return for the amount received, the receipt takes on the nature of that which it replaces and is taxable as ordinary income. Hort v. Commissioner, 313 U.S. 28 (1941); Commissioner v. P. G. Lake, Inc., 356 U.S. 260 (1958). However, when *291 a taxpayer has a contractual right or option to acquire property which if acquired would, itself, be a capital asset, then the contractual right or option is viewed as a capital asset. Dorman v. United States, 296 F. 2d 27 (C.A. 9, 1961), and Commission v. Ferrer, 304 F. 2d 125 (C.A. 2, 1962), affirming in part and reversing in part 35 T.C. 617 (1961). 9 In our view the problem here is to determine from the facts whether the interest which petitioner transferred to Cities Service was a contractual right or option to acquire property which would itself constitute a capital asset. There is nothing in the record to support respondent's position that the payment petitioner received from Cities Service was compensation for services which had been performed by petitioner for Cities Service. Therefore the cases cited by respondent dealing with payments which are in substance for services rendered are not apposite here. On the basis of the record as a whole we conclude that petitioner as did the taxpayer in Dorman v. United States, supra, transferred to Cities Service his contractual right to a partnership interest in the Waco project. *292 Since the partnership interest would be a capital asset, petitioner's contractual right to such an interest is likewise a capital asset. In our view the letter agreement of June 16, 1964 vested in petitioner the property and contractual rights to participate as a 20 percent equity holder in a limited partnership. Petitioner had a right to a capital interest in the gas processing plant project and not merely a right to share in the profits of the venture. Under the June 16, 1964 agreement petitioner was expected to share in capital contribution commitments, costs of operation and/or revenues to the extent of 20 percent of the project. Petitioner had paid $2,500 to Shoaf as his share of capital expenditures made in exploring the feasibility of the gas processing plant project. 10 Respondent does not specifically argue that the transfer by petitioner to Cities Service of his interest in the Waco project was not a "sale or exchange." However, some of respondent's arguments suggest that he is taking this position. In order for the receipt from the disposition of a "capital asset" to result in "capital gain" the asset must be disposed of in a "sale or exchange." Commissioner *293 v. Gillette Motor Co. supra, Pounds v. United States, 372 F. 2d 342, 349-351 (C.A. 5, 1967)
In the letter of April 21, 1966 Cities Service proposed to acquire any and all "rights or interests" petitioner may have or claim in the Waco project. In accepting and agreeing to the letter of April 21, 1966 petitioner accepted and agreed to transfer, by assignment, "any and all contract and/or property rights of every kind and character" in the gas processing plant to Cities Service. By the assignment, dated April 21, 1966, petitioner transferred all contract and property rights in the gas processing plant to Cities Service in consideration of the sum of $50,000. Petitioner received the sum of $50,000 and his right to participate as an equity holder in the project was terminated. Cities Service gained the right held by petitioner to obtain a 20 percent capital interest in the project. Petitioner's rights were not retained by petitioner or extinguished, but rather, were transferred in a transaction constituting in substance a sale or exchange. See Bisbee-Baldwin Corporation v. Tomlinson, 320 F. 2d 929, 935-936 (C.A. 5, 1963). 11 We conclude that the *294 $50,000 received by petitioner was the proceeds from the sale or exchange of a capital asset. Decision will be entered for petitioner. Footnotes
1. Respondent included only $47,500 of the $50,00 in petitioners' income in the notice of deficiency. He reduced the $50,000 petitioner received by $2,500 which he denominated "Brokerage fee claimed." ↩