Harrison E. Spangler and Myrtle B. Spangler v. Commissioner.
Spangler v. Commissioner
Docket Nos. 72720 and 84075.
United States Tax Court
T.C. Memo 1961-341; 1961 Tax Ct. Memo LEXIS 6; 20 T.C.M. (CCH) 1783; T.C.M. (RIA) 61341; December 26, 1961
*6 Petitioner and her associates recovered $861,027.45 in 1955 pursuant to a decree entered in 1952 by the Oregon trial court and affirmed in 1955 by the Oregon Supreme Court. This recovery consisted of an amount accepted in settlement from one defendant and the amount petitioner and her associates were able to collect after diligent efforts by execution against the other defendants. The judgment was for the value of stock at the date of liquidation of the corporation which stock had previously been wrongfully acquired by the defendants, dividends paid on the stock between the time it was wrongfully acquired and the date of liquidation of the corporation, and interest on both these amounts. Held, petitioner's total recovery in 1955 should be allocated between the value of the stock at date of liquidation and the dividends and interest in the proportions that each bore to the total judgment, the amount allocated to the value of the stock at the date of liquidation being long-term capital gain and the remainder ordinary income. Petitioner paid legal fees in 1952, 1953, 1955, and 1956 in prosecuting the suit. Held, further, the legal fees are allocable between capital expenditure and ordinary *7 income in the same ratio as the recovery on the judgment, the portions allocated to capital expenditures in 1952, 1953, and 1955 being a reduction in the amount of the recovery allocated to long-term capital gain in 1955 and the remainder deductible in the year paid as nonbusiness expenses. The portion allocated to capital expenditure in 1956 is a reduction in long-term capital gain of that year and the balance deductible as a nonbusiness expense in that year. H. Myron Gleason, Esq., Public Service Bldg., Portland, Ore., for the petitioners. Walter I. Auran, *8 Esq., for the respondent. SCOTT Memorandum Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1952, 1953, 1955, and 1956 in the respective amounts of $3,021.12, $322.96, $16,808.15, and $309.70. The issues presented for decision are: 1. Whether the amount received by petitioners in 1955 as their share of a settlement with one defendant while appeal from lower court decision in suit for rescission of sale of stock and restitution was pending, and partial collection of judgment after decision of appellate court from other defendants was long-term capital gain in its entirety as contended by petitioners, or was partially ordinary income as determined by respondent. 2. Whether amounts paid by petitioners as legal expenses in 1952, 1953, 1955, and 1956 in prosecuting the suit are deductible in full as ordinary and necessary expenses for the production or collection of income or the management, conservation, or maintenance of property held for the production of income as claimed by petitioners, or are in part capital expenditures as contended by respondent. All of the facts have been stipulated and are found accordingly. *9 The petitioners, husband and wife residing in Portland, Oregon, filed joint Federal income tax returns for the years 1952 and 1953 with the district director of internal revenue at Des Moines, Iowa, and for the years 1955 and 1956 with the district director of internal revenue at Portland, Oregon. Prior to February 8, 1944, Myrtle B. Spangler (hereinafter referred to as petitioner) and her associates (individual members of the Buehner family and the Buehner Investment Company) were minority stockholders in the Eastern and Western Lumber Company, an Oregon corporation (hereinafter referred to as Eastern). The outstanding capital stock of Eastern was 10,000 shares, of which petitioner and her associates owned 2,500 shares (hereinafter referred to as the Buehner stock). Petitioner owned 374 shares of the Buehner stock. Charles B. Duffy, K. H. Koehler, L. A. Morrison, and Frank H. Ransom, the four managing officers of Eastern, owned or controlled the remaining 7,500 shares of that corporation's stock with the exception of a few shares. On February 8, 1944, petitioner and her associates were induced to sell their 2,500 shares of stock in Eastern for $250,000 or $100 per share. The par *10 value of the stock was $100 per share. On April 9, 1945, Eastern granted an option to another company to purchase certain timberlands. On July 12, 1945, it sold a portion of its millsite and on February 11, 1946, sold the remaining part of its millsite. On October 10, 1946, the board of directors and stockholders of Eastern adopted resolutions declaring the corporation to be dissolved and directing its officers to wind up its affairs and distribute its assets among the holders of its outstanding stock. A certificate and copies of resolutions dissolving the corporation were filed with the Corporation Department of the State of Oregon on November 6, 1946. Subsequently, three extensions of the time of liquidation were issued, the last expiring November 6, 1953. On October 23, 1946, by virtue of a resolution of its board of directors and stockholders, Eastern distributed and paid to its stockholders a liquidating dividend of $3,788,458.41, obtained as the proceeds of the sale of the properties as heretofore set forth and of numerous items of personal property. This sum represented the total amount of the cash proceeds received by Eastern on the sale of its assets. Following the *11 distribution of the liquidating dividend, the stockholders repaid to Eastern a portion of the liquidating dividends received by them to be used to discharge certain liabilities, leaving a net amount received by them of $3,435,990.30, or $429,498 per share of Eastern's stock outstanding on October 23, 1946. Sometime after October 23, 1946, certain facts and circumstances were discovered by petitioner and her associates which led them to believe that they had been induced to sell their stock through fraud and misrepresentation. After this discovery and as a result thereof petitioner and her associates on December 3, 1948, instituted a suit in equity in the Circuit Court of the State of Oregon for the County of Multnomah, naming among others Eastern and its managing officers as defendants and alleging among other things that petitioner and her associates had been induced to part with their 2,500 shares of Eastern stock through fraud and misrepresentation. The second amended complaint on which the above suit was tried, prayed for a decree as follows: 1. Rescinding the sales and transfers of each and all of the 2500 shares of Eastern, and rescinding the agreement to pay Butchart and *12 Phillips all commission which they received. 2. Declaring that the defendants and each of them were and are trustees by their acts herein before alleged of said 2500 shares of stock and of the assets of Eastern derived from and realized by the company's liquidation and dissolution. 3. Declaring and establishing a trust in favor of each of the plaintiffs in the $200,000 fund described in paragraphs XIII and XIV above or in so much thereof as now remains in the possession of the defendant, Charles B. Duffy. 4. Requiring a full and complete accounting by said managing officers and their representatives of all the assets of Eastern held by it prior to its dissolution and subsequent thereto. 5. That the defendants Butchart and Phillips be decreed to account and pay over to plaintiffs the sum of $12,500 paid to them by plaintiffs as commission for their services. 6. Enjoining and restraining defendant, The United States National Bank of Portland (Oregon) and defendant, Charles B. Duffy, from paying out or otherwise disposing of any of said fund, or any investments or property purchased therewith, now in their possession or under their control as trustee, agent or otherwise for *13 said defendants or any of them and derived from the liquidation of Eastern. On June 4, 1952, the Circuit Court of Multnomah entered its decree which provided in part as follows: The court having heretofore found for the plaintiffs and against the defendants that the allegations of plaintiffs' second amended complaint as amended, and the allegations of their reply to the answers and the further and separate answers and defenses of the defendants * * * are true and sustained by the evidence and that the allegations set forth in the answers and further and separate answers and defenses of defendants last above named are not sustained by the evidence and are not true and do not constitute a defense of or bar to plaintiffs' right of suit and right to relief prayed for in their complaint; now, therefore, based upon the evidence and records in this suit and the findings made by the court heretofore referred to and in its findings and order on the accounting, which findings are hereby reiterated and found, it is hereby, ORDERED, ADJUDGED AND DECREED AS FOLLOWS: 1. That the sale and transfer by plaintiffs on February 8, 1944, of their 2500 shares of capital stock of Eastern and Western *14 Lumber Company to Charles B. Duffy, K. H. Koehler, Frank H. Ransom, and L. A. Morrison be and is rescinded, cancelled, annulled and held for naught as of February 8, 1944; 2. That Eastern and Western Lumber Company having been dissolved and liquidated and its assets distributed to its stockholders appearing of record and it being impossible for the defendants * * * to return to plaintiffs their said 2500 shares of capital stock of Eastern and Western Lumber Company the plaintiffs are entitled to and are hereby given joint and several judgment against Charles B. Duffy, K. H. Koehler, The United States National Bank of Portland as executor of the estate of Frank H. Ransom, deceased, and Lee Burton Morrison as executor of the estate of L. A. Morrison, deceased, and in the following amounts: (a) $782,495.00, together with interest thereon at the rate of 6% per annum from October 23, 1946, which said interest up to the date of the entry of this decree is $263,178.95. (b) $3750.00 dividends on plaintiffs' 2500 shares of stock with interest thereon at the rate of 6% per annum from the date of their payment April 15, 1944, which said interest up to the date of the entry of this decree *15 is $1828.13. * * *
Paragraphs (c) through (h) of this decree are identical to paragraph (b) except for the date of payment of the dividends and the amount of interest to the rate of the decree, these dates and amounts being as follows: Para-
Interest to
graph
Dividend
Date Paid
Date of Decree
(c)
$3,750.00
July 15, 1944
$1,771.88
(d)
3,750.00
October 15, 1944
1,715.63
(e)
3,750.00
January 15, 1945
1,659.38
(f)
3,750.00
April 15, 1945
1,603.13
(g)
3,750.00
July 15, 1945
1,546.88
(h)
3,750.00
October 15, 1945
1,490.63
This decision was appealed by the defendants to the Supreme Court of Oregon which entered its decision on September 21, 1955, this decision being reported as Barnes v. Eastern and Western Lumber Company, 205 Ore 553, 287 P. 2d 929 (1955). The decision of the Oregon Supreme Court affirmed the money judgment of the lower court and made certain modifications and exceptions to its decree. The Supreme Court of Oregon held that the defendants, the managing officers of Eastern, wrongfully acquired title to petitioner's stock, by means of fraud, and were unjustly enriched thereby. The court approved the *16 money judgment of the lower court on the theory that unless such judgment were entered the defendants would be unjustly enriched, a theory stemming from restitution to the plaintiffs of the value the stock possessed at the time of liquidation less the consideration paid therefor. After the appeal to the Oregon Supreme Court was argued but before decision was rendered, petitioner and her associates entered into a settlement stipulation with the United States National Bank as executor and trustees of the Estate of Frank H. Ransom, decreased, whereby they agreed, for a cash consideration of $280,000 paid to them, not to further prosecute their claim against the estate or the beneficiaries thereof. It was further agreed that the $280,000 collected from the Ransom estate would be credited against any judgment recovered against the other three managing officers. The following schedule shows the net amount due petitioner and her associates from the managing officers of Eastern (including the $280,000 settlement with the Ransom estate) computed in accordance with the decree of the Multnomah County Circuit Court as affirmed by the Oregon Supreme Court: Value of the 2500 shares on 10/23/46 ($429,498 X 2500)
$1,073,745.00
Less: Amount paid petitioner and associates for their 2500
shares on Feb. 8, 1944 ( $100 X 2500)
$250,000.00
Interest on the $250,000 from date of sale (2/8/44)
to liquidation date (10/23/46)
41,250.00
291,250.00
Amount due petitioner and associates as proceeds on liquida-
tion of stock
$ 782,495.00
Add: Dividends paid on the 2500 shares from April 15,
1944 through October 15, 1945
26,250.00
Total interest awarded to date of decree
274,794.61
301,044.61
Net amount due petitioner and associates at date of decree
$1,083,539.61
*17 The petitioner, as her proportionate share of the legal expenses incurred in securing the judgment against the managing officers and their representatives, paid the following amounts in the taxable years indicated: Year
Amount
1952
$6,171.00
1953
2,244.00
1955
8,936.32
1956
2,199.21 The above amounts were deducted from petitioners' income tax returns as nonbusiness expenses. During the year 1955 petitioner and her associates collected $861,027.45 on the judgment recovered against the managing officers of Eastern or their representatives, including the $280,000 settlement with the Ransom Estate. Except for a small sum collected in 1957, this is all that petitioner and her associates have collected on this judgment. In an effort to collect further on the judgment petitioner and her associates had execution issued by the Circuit Court of Multnomah County, Oregon, and has [have] examined the judgment debtors under oath and has [have] made a diligent search and inquiry for additional assets of the judgment debtors but have been unable to find other assets which might be subject to execution. Of the amount of $861,027.45 petitioner received $128,809.70 as *18 her proportionate share and, in their joint income tax return for 1955 petitioners reported this amount as long-term capital gain. In his notice of deficiency relating to the taxable years 1952 and 1953, respondent disallowed in full the claimed deduction for legal expenses. Respondent now concedes that petitioners are entitled to a deduction in 1952 and 1953 for those legal expenses attributable to the recovery of items taxable to petitioner as ordinary income. In his notice of deficiency for the year 1955 respondent determined that petitioner's share of the $280,000 settlement with the estate of Frank H. Ransom should be allocated to interest, dividends and recovery of stock value in the same ratio as those items appear in the judgment, computing the allocation to be 72.21655699 percent to liquidation value of stock, 2.42261564 percent to dividends, and 25.36082737 percent to interest. Respondent further determined for the year 1955 that the amount collected from the managing officers or their representatives other than the Ransom estate, should first be applied to interest and the remainder should then be allocated to dividends and the recovery of the value of stock in the *19 same ratio as those items appear in the judgment and that the legal fees should be allocated between capital recovery and ordinary income in proportion to those items as appearing in the judgment. Respondent's determination for the year 1955 resulted in increasing petitioners' ordinary income by $41,109.26 which he allocated to interest from the recovery on the judgment, $2,846.55 which he allocated from this recovery to dividends and $6,453.50 which he allocated as the legal expenses applicable to the capital recovery and decreasing capital gains as reported by $50,409.31, the total of the amounts of the increases in ordinary income. For the year 1956 respondent allocated the deduction claimed by petitioner for legal fees between an ordinary deduction and a reduction of long-term capital gains reported on the basis of 27.78344301 percent and 72.21655699 percent, the ratios of ordinary income and capital gain as determined by him to be in accordance with the judgment in the litigation for which the fees were paid, thus increasing ordinary income by $1,588.21 and decreasing capital gains included in petitioners' total taxable income as reported by 50 percent of such amount or $794.10. *20 It is petitioner's position that the entire amount received by her pursuant to the judgment obtained in the Circuit Court of Multnomah County, Oregon, which was affirmed by the Supreme Court of that State, constituted long-term captal gain. Petitioner contends that under the holding of the Oregon Supreme Court, the final liquidation of Eastern did not occur until June 4, 1952, the date of entry of the judgment by the lower court, and that the method used to arrive at the money judgment was the equivalent of requiring the corporate stockholder officers who were the defendants in the suit to return to the corporation assets wrongfully taken therefrom together with interest thereon, and have these assets redistributed to the plaintiffs. Petitioner cites a number of cases for the proposition that it is the findings of the Oregon courts which determine the nature of the recovery for Federal tax purposes. A discussion of the various cases cited by petitioner would serve no useful purpose since, in our view, both the decision of the Circuit Court of Multnomah County and the decision of the Supreme Court of Oregon, affirming the money judgment entered by that court, were based on the theory *21 that Eastern was dissolved as of October 23, 1946. The judgment entered by the Circuit Court of Multnomah County on June 4, 1952, recites the fact that Eastern has been dissolved and liquidated and its assets distributed to its stockholders and allows as the first item thereof a stated amount with interest thereon from October 23, 1946. The opinion of the Oregon Supreme Court states that although the judgment of the county court cannot be upheld on the constructive trust theory, it can be upheld upon any theory which stems from the right to restitution, restitution being within the pleadings and proceedings during the trial. The opinion states that the stock has been consumed but the plaintiffs can be awarded a judgment for the value it possessed at the time of liquidation less the consideration paid. Both the county court judgment and the Oregon Supreme Court opinion proceed upon the theory of prior liquidation of the corporation, and read in its context affirming the money judgment of the county court, the opinion of the Oregon Supreme Court must refer to a liquidation which was effected as of October 23, 1946. The judgment which petitioner obtained provided for a payment of an amount *22 representing the liquidating dividend which she would have received had she owned her shares of stock at the time of liquidation less the $100 per share she had been paid for her stock on February 8, 1944, with interest on such amount to October 23, 1946, the date of the distribution of the liquidating dividend. The judgment of the county court provides for payment to the plaintiffs in the amount of $782,495 (which was the value of the stock on October 23, 1946, less the amount paid for the stock with interest from the date of payment to October 23, 1946) together with interest thereon at the rate of 6 percent, which interest up to the date of entry of the decree is $267,178.95. The judgment then proceeds to provide for payment to plaintiffs of the dividends applicable to their shares of stock which were received by the defendants between February 8, 1944, and October 15, 1945, with interest thereon from the various dates of payments, the amount of such interest to the date of the entry of the decree being set forth in each instance. We think it is clear from the judgment that it provided for the restitution to petitioner of the dividends she would have received from the date of sale *23 of her stock up through October 15, 1945, had she not sold her stock and provided for specific amounts of interest due as of the date of the entry of the decree. From the wording of the decree we interpret it as intending that interest on the sums set forth as the value of the shares of stock less the prior payments and the dividends declared after the sale of the shares of stock shall continue to accrue until date of payment of the judgment. There is no showing in the record that the dividends paid between February 8, 1944, the date of the sale of the stock and October 15, 1945, were other than ordinary dividends, which would have constituted ordinary income to the various plaintiffs in the year of payment had they received them as of that time. The taxability of amounts received pursuant to a judgment in a lawsuit depends upon the nature of the claim made and the basis of the recovery. Western Products Co., 28 T.C. 1196, 1208 (1957) and cases there cited. Had the judgment been paid in full, petitioner's pro rata share of the amounts recited therein as representing the dividends (totalling $26,250 for all of the plaintiffs) and the interest specifically recited therein *24 (totalling for all plaintiffs $274,794.61), as well as any amount paid as interest from the date of entry of the judgment to the date of payment thereof, would have constituted taxable income to her. Kieselbach v. Commissioner, 317 U.S. 399 (1943); Western Products Co., supra.However, the judgment was not paid in full, the total collection thereon in 1955 being $861,027.45 including the $280,000 settlement made with the Ransom Estate. Respondent contends that petitioner's pro rata share of the $280,000 collected as a result of the settlement with the Ransom Estate should be prorated among the three items of the judgment, that is, the $782,495 representing the value of the stock at the date of liquidation less prior payments, the $26,250 of dividends, and the $274,794.61 of interest, on the basis that each of these amounts bears to the total amount of the judgment, $1,083,539.61. Respondent further contends that the balance of the $861,027.45 which was collected from the defendants other than the Ransom Estate should be applied first to interest and the remaining portion prorated between the amount representing dividends and the amount representing the *25 value of the stock on October 23, 1946, less the amount previously paid therefor. The record shows that in an effort to collect further on the judgment petitioner and her associates had execution issued by the Circuit Court of Multnomah County, Oregon, and examined the judgment debtors under oath and made a diligent search and inquiry for additional assets of the judgment debtors but were unable to find other assets which might be subject to execution. It also shows that except for a small sum collected in 1957, the $861,027.45 was the total amount ever collected under the judgment. Upon the basis of the facts known at the end of 1955, the amount collected on the judgment in that year was the total amount which would ever be received thereon. In William Justin Petit, 8 T.C. 228, 235-236 (1947), we held that where a final payment was received pursuant to a compromise after institution of suit with respect to two notes executed in a prior year, and such compromise payment was less than the combined amount of the two notes, no portion of the amount paid pursuant to such compromise represented interest for the current year. In that case we stated: Petitioners are apparently *26 relying on the doctrine that, when both principal and interest are due on a debt, undesignated partial payments thereon must first be appropriated to interest before any part is applied to the principal. Cf. George S. Groves, 38 B.T.A. 727; Theodore R. Plunkett, 41 B.T.A. 700; affd. 118 Fed. (2d) 644. However, we do not think this doctrine is applicable here, where the payment was not a partial payment upon the indebtedness, but a lump sum settlement of the entire debt, and was considerably less than the face value of the two notes which aggregated $20,750. In the instant case the $861,027.45 is the total amount that petitioner and her associates were able to collect after diligent effort and as of 1955 was the reasonably anticipated final payment on the judgment. For this reason, here, as in William Justin Petit, supra, we do not think the principle of first applying a payment to interest is applicable but that the application should be made among the various items of the judgment in accordance with the principles used where an amount is received in settlement. It is to be noted that respondent is not contending that the amount *27 received in 1955 should first be allocated to interest accruing from June 4, 1952, when the judgment was entered by the county court to the date of payment in 1955 but is contending that the amount should first be allocated to the specified amounts of interest set forth in the decree of the county court which was the interest accrued to the date of entry of that decree, June 4, 1952. Consistency in respondent's theory would require a contention that interest should also first be allocated to the interest accruing from June 4, 1952, to the date of the collection of the $861,027.45. [1] Cf. Helvering v. Drier, 79 F. 2d 501 (C.A. 4, 1935), affirming a Memorandum Opinion of this Court. We hold that 72.21655699 percent (the ratio of $782,495 to $1,083,539.61) of the $128,809.70 received by petitioner in 1955 from the litigation over *28 the Eastern stock is taxable as capital gains. The balance of the amount received by petitioner constitutes the amount applicable to dividends and interest, taxable as ordinary income. Specialty Engineering Co., 12 T.C. 1173 (1949). Cf. Glenshaw Glass Company, 18 T.C. 860, 871-872 (1952), reversed on another issue 348 U.S. 426 (1955). Petitioner contends that the attorneys' fees paid by her in each of the years 1952, 1953, 1955, and 1956 are deductible in full under the provisions of section 23(a)(2) of the Internal Revenue Code of 1939 and section 212 of the Internal Revenue Code of 1954 as ordinary and necessary expenses paid for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Respondent, in his notice of deficiency, disallowed the deductions for attorneys' fees paid in 1952 and 1953 in full and for 1955 and 1956 allocated such payments of attorneys' fees between reductions of long-term capital gains and ordinary deductions on the basis that the amount determined in the judgment as being the value of the stock as of October 23, 1946, less *29 previous payments therefor and the combined amounts determined as dividends and interest each bore to the total judgment. Respondent, on brief, concedes that the attorneys' fees paid in 1952 and 1953 should be allocated on this same basis. We have held that the judgment recovered by petitioner and her associates included both amounts taxable as capital gains and amounts representing interest and dividends taxable as ordinary income. The attorneys' fees were expended, insofar as the record shows, equally for the recovery of these various amounts. It appears from the nature of the relief sought in the suit, the judgment of the county court and the decision of the Oregon Supreme Court that petitioner was seeking and was granted relief in the nature of the recovery of capital and of the collection of income. Therefore, the attorneys' fees are properly allocable to the capital recovery and the collection of income as determined by respondent. Daniel S. W. Kelly, 23 T.C. 682, affd. 228 F. 2d 512 (C.A. 7, 1956); Specialty Engineering Co., supra, and Glenshaw Glass Co., supra; Munson v. McGinnes, 283 F. 2d 333 (C.A. 3, *30 1960); Cf. Garrett v. Crenshaw, 196 F. 2d 185 (C.A. 4, 1952) and Helvering v. Stormfeltz, 142 F. 2d 982 (C.A. 8, 1944), modifying a Memorandum Opinion of this Court. The parties do not specifically discuss in what year the portion of the legal fees which constituted a capital expenditure in the years 1952 and 1953 are to be used to reduce capital gains. Items of this nature paid before receipt of the amount for the recovery of which they were expended are in the nature of an additional cost or basis of the property, the disposition of which results in the receipt of long-term capital gain, and, therefore, are deductible from the capital gain in the year of its receipt. Cf. Johnson and Co. v. United States, 149 F. 2d 851 (C.A. 2, 1945), and Munson v. McGinnes, supra.In the instant case it appears that petitioner had recovered the entire basis which she had in her stock in 1944 when she received $100 per share therefor, and, therefore, had no basis left to be recovered when she received the payment under the judgment in 1955. Therefore the total amount of the capital expenditures for attorneys' fees in 1952 and 1953 would constitute *31 the remaining basis of the stock to be recovered in 1955 and such amounts are deductible from the portion of the judgment allocated to long-term capital gains together with the amount of the attorneys' fees paid in 1955 allocated as a capital expenditure, in computing petitioner's net long-term capital gain in 1955. The respondent correctly allowed the deduction of the portion of the attorneys' fees attributable to a capital expenditure in 1956 as a reduction of the capital gains otherwise reported by petitioner in that year. Estate of Bessie E. Machris, 34 T.C. 827 (1960). Decision will be entered under Rule 50. Footnotes
1. The amount as computed in the statutory notice as shown in respondent's brief results from $10,623.14 interest from the Ransom settlement (374/2500 of 25.36082737 percent of $280,000) plus $30,486.12 interest from other collection (374/2500 of interest per decree), $274,794.61, less interest allocated from Ransom settlement, $71,010.32.↩